**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Civil Case 1:23-cv-20943-KMM MOORE/LOUIS**

DON'T TREAD ON US, LLC, a Florida
limited liability company,

           Plaintiff,

v.

TWITTER, INC. a Delaware corporation,

           Defendant.

**DEFENDANT TWITTER, INC.'S MOTION TO TRANSFER AND**
**INCORPORATED MEMORANDUM OF LAW**

Defendant Twitter, Inc. ("Twitter") moves under 28 U.S.C. § 1404(a) for entry of an order transferring this action to the Northern District of California because the only operative contract underlying Plaintiff's purported breach of contract claim – Twitter's User Agreement – contains a mandatory forum selection clause requiring the transfer of this action to the Northern District of California. *See* Twitter User Agreement, May 25, 2018. (Ex. 1 at *8) ("User Agreement").

Plaintiff Don't Tread On Us LLC's ("DTOU") breach of contract claim in this action relates to the suspension of two accounts associated with Jared Beck ("Mr. Beck") and Elizabeth Lee Beck ("Mrs. Beck") on Twitter's social networking service. (Dkt. 1-1 at *7-8, ¶ 3) The accounts associated with Mr. Beck and Mrs. Beck have been suspended since January 2019 and June 2019, respectively, and DTOU brings this action as the "assignee of all rights" held by Mr. and Mrs. Beck pursuant to their "contractual relationships with Twitter." (Dkt. 1-1 at *12, 14 ¶¶ 11, 18.)

1

# BACKGROUND

Twitter operates a social media communication service that allows users to communicate their views through posts—called "tweets"—on the platform. Mr. Beck and Mrs. Beck used Twitter accounts until January 2019 and June 2019, respectively, when the accounts were suspended. (Dkt. 1-1 at *12 ¶ 11.)

In order to use the platform, a user must agree to the terms of the User Agreement, which states that for all U.S. residents, "the Twitter User Agreement comprises [the hyperlinked] Terms of Service, [hyperlinked] Privacy Policy, the [hyperlinked] Twitter Rules and all incorporated policies.[1] (Ex. 1 at *1.) The "Terms of Service ("Terms") govern [users'] access to and use of [Twitter's] services." (*Id.* at *2.)

Importantly, the terms of the User Agreement require that "[a]ll disputes relat[ing] to [the] Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States, and [users] consent to personal jurisdiction and waive any objection as to inconvenient forum." (*Id.* at *8.) Mr. and Mrs. Beck agreed to accept the terms of Twitter's User Agreement. (*Id.* at *2 ("By using the Services you agree to be bound by these Terms."), *8 ("By continuing to access or use the Services … you agree to be bound by the revised Terms .... These Terms are an agreement between you and Twitter ...")); (Dkt. 1-1 at *14 ¶ 21 ("Both Jared Beck and Elizabeth Lee Beck have valid and enforceable contracts with Twitter").)

While the User Agreement states that Twitter gives its users "a personal, worldwide,

---

[1] The Court should consider the User Agreement and its mandatory forum selection clause. *See Newco Energy Acquisitions Holdings, LLC v. Shulgen*, 12-81249-CIV, 2013 WL 12149763, at *2 (S.D. Fla. Mar. 28, 2013). In addition, DTOU's Complaint alleges a breach of contract and specifically references the "contractual relationships with Twitter" of Twitter users, *i.e.*, the User Agreement. (Dkt. 1-1 at *14 ¶¶ 18, 20-26.) *See Huete v. Bank of New York Mellon*, 17-CV-20371, 2017 WL 1499241, at *1 (S.D. Fla. Apr. 25, 2017).

royalty-free, non-assignable and non-exclusive license to use the software provided to you as part of the Services," it also states that:

> "[t]his license has the sole purpose of enabling you to use and enjoy the benefit of the Services as provided by Twitter, in the manner as permitted by these Terms . . . [and] Nothing in these Terms gives you a right to use the Twitter name or any of the Twitter trademarks, logos, domain names, and other distinctive brand features. ***All right, title, and interest in and to the Services (excluding Content provided by users) are and will remain the exclusive property of Twitter and its licensors.***"

*See* User Agreement (Ex. 1 at *6) (emphasis added). In addition, the User Agreement states that Twitter "may suspend or terminate your account or cease providing you with all or part of the Services at any time for any or no reason, including, but not limited to, if we reasonably believe: (i) you have violated these Terms or the Twitter Rules or Periscope Community Guidelines . . . " (*Id.*) Twitter may also "remove or refuse to distribute any Content on the Services, suspend or terminate users, and reclaim usernames without liability to you." (*Id*. at *4.)

In or prior to January 2023, Mr. and Mrs. Beck purported to assign to DTOU all rights they had pursuant to their respective contractual relationships with Twitter. (Dkt. 1-1 at *14 ¶ 18.) Subsequently, on January 20, 2023, DTOU commenced this action against Twitter alleging breach of contract. (Dkt. 1-1.)

Despite the User Agreement's forum selection clause, DTOU filed this action in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida. *Id*. On March 9, 2023, Twitter removed the action to this Court. (Dkt. 1).[2]

---

[2] Twitter is also separately moving to dismiss the Complaint because the claims are meritless and should be dismissed as a matter of law. But as a threshold matter, this Court should correct the first fundamental problem with this action and transfer it to the Northern District of California pursuant to the mandatory forum selection clause in the User Agreement.

**ARGUMENT**

This action should be transferred to the Northern District of California at the outset of this litigation because DTOU's claim is subject to a mandatory forum selection clause contained in the User Agreement, which Mr. and Mrs. Beck agreed to when they used Twitter's services. *See* User Agreement (Ex. 1 at *8).

**I.     Legal Standard**

"The appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Trump v. Twitter, Inc.*, 21-22441-CIV, 2021 WL 8202673, at *2–3 (S.D. Fla. Oct. 26, 2021). The doctrine of forum non conveniens was codified in 28 U.S.C. § 1404(a) "for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.*; 28 U.S.C. § 1404(a).

To transfer an action under 28 U.S.C. § 1404(a), a movant must demonstrate that: "(1) an adequate alternative forum is available; (2) the public and private factors weigh in favor of a transfer; and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions, LLC v. Gov't of Belize,* 749 F.3d 1024, 1028 (11th Cir. 2014). However, "an enforceable forum-selection clause carries near-determinative weight in this analysis." *Id.*; *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("When, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered").

To assess whether a forum selection clause applies, "a court must determine whether: (1) the clause is valid; (2) the clause is mandatory or permissive; and (3) the claim at issue falls within the scope of the clause." *GDG Acquisitions, LLC,* 749 F.3d at 1028 (citing to *Bahamas Sales*

*Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012) and *Fla. Polk Cty. v. Prison Health Servs. Inc.*, 170 F.3d 1081, 1083 (11th Cir. 1999) for the propositions that the court must look to the language of the clause to determine if a claim falls within its scope, and whether the clause is mandatory or permissive). If a mandatory and valid forum selection clause governing the claims at issue is established, the burden shifts to the nonmovant to establish that the motion is improper. *Trump*, 2021 WL 8202673, at *3 (citing *Atl. Marine.,* 571 U.S. at 63; *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016); *Pappas v. Kerzner Int'l Bah. Ltd.*, 585 F. App'x 962, 967 (11th Cir. 2014)).

"The party seeking to avoid the forum selection clause bears a 'heavy burden of proof' that the clause should be set aside [and] [a] court evaluating a motion to transfer should afford no weight to either the plaintiff's selected forum or the parties' private interests, and [should] ignore the choice-of-law rules of the original venue." *Trump*, 2021 WL 8202673, at *3 (citations omitted). Indeed, there is "no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system." *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989) ("In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue.")

Furthermore, the Supreme Court has concluded that when a defendant files a motion to transfer to enforce a forum selection clause "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *A. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52 (2013); *see In re Ricoh.,* 870 F.2d at 574 (refusal to enforce forum selection clause must involve "exceptional

situation"). While "a district court may consider arguments about public-interest factors . . . [b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*. at 64 (stating "[a]lthough it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause,' such cases will not be common.") (citations omitted). The mandatory forum selection clause in the User Agreement here is essentially dispositive in the relevant transfer analysis. *See Trump*, 2021 WL 8202673, at *2.

## II.     The Action Should Be Transferred to the Northern District of California

DTOU alleges in this action that Twitter committed a breach of contract. Because the contract at issue—the User Agreement—has a forum selection clause mandating venue in San Francisco, California, this Court should transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

### a.     The Request for Transfer Should Be Resolved at the Outset of Litigation.

This action should be transferred before the Court considers any other aspect of this action. Indeed, "once a party files a transfer motion, disposing of that motion should unquestionably take top priority." *In re Apple, Inc.,* 979 F. 3d 1332, 1337 (Fed. Cir. 2020); *Zampa v. JUUL Labs, Inc.,* 2019 WL 1777730, at *3 (S.D. Fla. Apr. 23, 2019) (observing that motions to transfer are often decided at the outset even before a motion to remand).

Here, the forum selection clause that governs the scope of DTOU's claims dictates that any dispute must be brought in San Francisco County, California. *See* User Agreement (Ex. 1 at *8). Because this Court and others have found that this forum selection clause is mandatory and enforceable, and DTOU's breach of contract claim is within the scope of the clause, the Court should resolve and grant Twitter's motion to transfer as a threshold matter.

### b.  This Action Should be Transferred to the Northern District of California.

### i.  The forum selection clause is valid and mandatory.

The forum selection clause in the User Agreement explicitly states that "[a]ll disputes related to [the] Terms or the Services" in the User Agreement must be "brought solely in the federal or state courts located in San Francisco County, California," and that users "consent to personal jurisdiction and waive any objection as to inconvenient forum." (*Id*.) This same forum selection clause has been in effect since at least September 2009 and this Court has previously found it to be valid and mandatory. *See Trump*, 2021 WL 8202673, at *3.

In addition, in *Trump v. Youtube, LLC*, No. 1:21-cv-22445-KMM2021, WL 8398892, at *13 (S.D. Fla. October 6, 2021), this Court granted Youtube's motion to transfer to the Northern District of California based on a nearly identical mandatory forum selection clause in Youtube's Term's of Service.[3] Further, specifically addressing Twitter's User Agreement, this Court in *Trump v. Twitter* stated that the use of "all" and "solely" in the forum selection clause "clearly demonstrate[d] [that] the forum selection clause is mandatory." *Trump*, 2021 WL 8202673, at *6 (also noting use of the word "consent" does not make the clause permissive when "considering the mandatory language employed."). Other courts have also found this same clause to be mandatory and enforceable. *See Brittain v. Twitter Inc*., No. CV-18-01714-PHX-DGC, 2019 WL 110967, at *2 (D. Ariz. Jan. 4, 2019); *Wingo v. Twitter, Inc*., No. 14-2643, 2014 WL 7013826, at *3 (W.D.

---

[3] Youtube's mandatory forum selection clause provided that:

> All claims arising out of or relating to these terms or the Service will be governed by California law, except California's conflict of laws rules, and will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA. You and YouTube consent to personal jurisdiction in those courts.

*Trump v. Youtube, LLC*, 2021 WL 8398892, at *3.

7

Tenn. Dec. 12, 2014); *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1180 (E.D. Ark. 2019).

Here, while DTOU does not dispute or even reference the application of the forum selection clause, or its mandatory nature, it does admit that the User Agreement is valid and enforceable. (Dkt. 1-1 at *14 ¶ 21.) This Court has already determined that the same forum selection clause in the User Agreement is enforceable and mandatory in another case, and it should do the same here. *See Trump*, 2021 WL 8202673, at *3.

### ii. The forum selection clause encompasses DTOU's claims.

The User Agreement states that "[a]ll disputes related to [the] Terms or the Services" in the User Agreement are subject to the mandatory forum selection clause. *See* User Agreement (Ex. 1 at *8). The terms of the User Agreement state that Twitter may "remove or refuse to distribute any Content on the Services, suspend or terminate users, and reclaim usernames without liability to you." (*Id.* at *4.) In addition, the User Agreement states that Twitter can "suspend or terminate your account or cease providing you with all or part of the Services at any time for any or no reason." (*Id.* at *6.)

DTOU's sole claim effectively challenges Twitter's application of these terms in relation to the suspension of the accounts associated with Mr. and Mrs. Beck. (*See generally* Dkt 1-1.) Indeed, at the center of DTOU's allegations is the claim that the subject accounts have not been "restored," and Twitter breached its contract with Mr. and Mrs. Beck by failing to "unsuspend" the accounts. (Dkt. 1-1 at *2-3, 14 ¶¶ 3, 24).

This Court has previously found that the broad language used in Twitter's forum selection clause encompasses claims relating to the suspension of accounts. *See Trump*, 2021 WL 8202673, at *7 (finding that plaintiff's claim relating to suspension of account challenges Twitter's policies, rules, standards and was within the scope of the forum selection clause). Because the heart of

8

DTOU's claim is that Twitter breached the User Agreement because it failed to restore the subject accounts (Dkt. 1-1 at *14 ¶¶ 18 24), DTOU's breach of contract claim is within the scope of the mandatory forum selection clause. *See Trump*, 2021 WL 8202673, at *8; *Loomer v. Facebook, Inc.*, 19-CV-80893, 2020 WL 2926357, at *1 (S.D. Fla. Apr. 13, 2020) (finding that defamation action brought by plaintiff after defendant banned her from using its social media platform related to a contract containing a valid forum selection clause, and granting motion to transfer venue).

### iii. No extraordinary circumstances exist to decline transfer.

"By enforcing the contractual forum, the Court is not attempting to limit the plaintiff's usual right to choose its forum, but is enforcing the forum that the plaintiff has already chosen." *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). Here, there are no extraordinary circumstances that would weigh against a transfer to the Northern District of California.

First, there are no allegations of "fraud, duress, or misrepresentation, or other misconduct in connection with the agreement to the forum selection clause." *Id.* at 807 (citations and quotations omitted). Instead, DTOU purports to rely on the User Agreement, which contains the forum selection clause, for its breach of contract claim. (Dkt. 1-1 at *14 ¶ 21.) Second, there is no strong public policy of the forum that would contravene enforcement of the forum selection clause in this action. *P & S Bus. Machines,* 331 F.3d at 808 (noting that while congestion of the forum's court docket may be an appropriate consideration on a § 1404 motion to transfer, it is not a dispositive factor).

Third, there is nothing to suggest that requiring DTOU to proceed in the forum agreed to would be so difficult that it would deprive DTOU of its day in Court or a remedy. *Id.* at 807-808. According to the Complaint, DTOU's purported assignors and principals, Mr. and Mrs. Beck,

9

practice law nationwide and previously practiced in California. (*See* Dkt. 1-1 at *3 ¶ 4.) Furthermore, DTOU cannot claim any surprise that Twitter would seek to enforce the forum selection clause in the User Agreement.

This Court should therefore enforce the mandatory forum selection clause and transfer this action to the Northern District of California. *See P & S Bus. Machines, Inc.*, 331 F.3d at 807 (applying principles and reversing district court's refusal to transfer case to California pursuant to enforceable forum selection clause); *Food Mktg. Consultants, Inc. v. Sesame Workshop*, 09-61776-CIV, 2010 WL 1571206, at *5 (S.D. Fla. Mar. 26, 2010), *report and recommendation adopted,* 09-61776-CIV, 2010 WL 1571210 (S.D. Fla. Apr. 20, 2010) (applying principles and granting motion to transfer).

### c. This Action Can be Transferred to the Northern District of California.

The United States District Court for the Northern District of California has jurisdiction over this case and the parties, and the Northern District of California is a proper venue. (Dkt. 1); 28 U.S.C. §1391(a). Twitter is incorporated in Delaware and has its principal place of business in San Francisco, California. (Dkt. 1 at *2 ¶ 6.) The mandatory forum selection clause in the User Agreement explicitly provides for users' consent to personal jurisdiction in the federal or state courts of San Francisco County, California, as well as their waiver of any objection claiming an improper venue. *See* User Agreement (Ex. 1 at *8).

### CONCLUSION

This action should be transferred to district court for the Northern District of California on account of the forum selection clause in the User Agreement which mandates venue in Northern California and undoubtedly encompasses DTOU's breach of contract claim.

**Local Rule 7.1(a)(3) Certification**

Twitter's undersigned counsel certifies that he conferred in writing with counsel for Plaintiff in a good faith effort to resolve the issues raised in this motion and was unable to do so.

Dated: March 15, 2023

Respectfully submitted,

 /s/ Joshua C. Webb
Joshua C. Webb (FBN: 051679)
josh.webb@hwhlaw.com
val.taylor@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
(813) 221-2900 (Facsimile)
*Attorneys for Defendant*