UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:23-cv-20943-KMM MOORE/LOUIS

DON'T TREAD ON US, LLC,

      Plaintiff,

vs.

TWITTER, INC.,

      Defendant.

_____/

## PLAINTIFF DON'T TREAD ON US, LLC'S OPPOSITION TO DEFENDANT TWITTER, INC.'S MOTION TO DISMISS

Plaintiff, DON'T TREAD ON US, LLC ("DTOU" or "Plaintiff"), by and through undersigned counsel, hereby files its Opposition to Defendant Twitter, Inc.'s Motion to Dismiss:

## MEMORANDUM OF LAW

### Introduction

This action concerns the failure of Defendant, Twitter, Inc. ("Twitter") to reinstate the accounts of two attorneys suspended for engaging in political speech and advocacy, despite announcing a "general amnesty" in November 2022 and reinstating numerous other accounts since that time. The complaint was filed in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, asserting a single claim for breach of contract. Twitter removed the action to this Court, and then filed a motion to dismiss and a motion to transfer venue. As discussed in detail below, the motion to dismiss should be denied for the following reasons.

As a threshold matter, as set forth at length in Plaintiff's Motion to Remand Based on Lack of Subject-Matter Jurisdiction and Request for Attorneys' Fees and Costs Caused by Improvident Removal ("Motion to Remand") [D.E. 10], this Court lacks subject-matter jurisdiction over the action and is thus precluded from deciding the motion to dismiss on the merits.  While Twitter removed this action on the basis of diversity jurisdiction, it has failed to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.  Accordingly, the Court should remand this action to state court and deny Twitter's motion to dismiss as moot.

Moreover, even if this Court could reach the motion on the merits, it should be denied because Twitter has failed to supply an adequate reason to dismiss the action under Rule 12(b)(6).  First, the argument that Plaintiff's claim is barred by language in the terms of service on Twitter's website is inapposite.  Plaintiff's breach-of-contract claim is pled on the basis of party conduct which modified the written contractual terms, and this very theory of liability was recently upheld at the pleading state in a case brought by a permanently suspended user against Twitter.  *Berenson v. Twitter, Inc.*, No. C 21-09818 WHA, 2022 WL 1289049, *2 (N.D. Cal. Apr. 29, 2022) (Alsup, J.) ("Plaintiff plausibly avers that Twitter's conduct here modified its contract with plaintiff and then breached that contract by failing to abide by its own five-strike policy and its specific commitments set forth through its vice president.").

Twitter's remaining arguments for dismissal lack merit as well.  While Twitter argues that the terms of service also barred the accountholders from assigning their claim to Plaintiff, this is untrue as a matter of law.  *See Creditors Adjustment Bureau, Inc. v. IBT Media Inc.*, Case No. 19-cv-02305, 2019 WL 3082845, *2 (N.D. Cal. July 15, 2019) ("a contractual provision prohibiting the assignment of 'rights' under the contract does not on its own prohibit the right to assign a claim for damages for a breach of contract").  Here, Twitter does not – and cannot –

point to any language **specifically** barring assignment of the right to bring suit, dooming its argument.

Finally, Twitter argues that Section 230 of the Computer Decency Act ("CDA"), *i.e.*, "section 230 immunity," bars the claim.   However, courts have roundly rejected the attempt to extend section 230 immunity to breach-of-contract claims.  *Berenson*, 2022 WL 1289049, at *2 ("With regard to breach of contract and promissory estoppel, this order reads our court of appeals' *Barnes* decision to allow those claims to go forward despite Section 230, so long as they are properly pleaded under state law." (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)).

For all of these reasons, and as discussed in further detail below, the Court should deny Twitter's motion to dismiss.

### Factual and Procedural Background

Plaintiff initiated this action on January 20, 2023, by filing its Complaint[1] in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.  The Complaint asserts a single state-law claim for breach of contract against Twitter.  Compl. ¶¶ 20-26.  It alleges that Jared Beck and Elizabeth Lee Beck (collectively, "the Becks") are married attorneys who filed suit against the Democratic National Committee ("DNC") and its former chair, congresswoman Debbie Wasserman Schultz, on behalf of Bernie Sanders supporters for rigging the 2016 Democratic primaries in favor of Hillary Clinton.  *Id*. ¶ 7; *see also Wilding v. DNC Servs. Corp.*, 941 F.3d 1116 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2828 (2020).  The

---

[1]     The Complaint is attached to Twitter's Notice of Removal as pages 6 to 15 of Exhibit A [D.E. 1-1] and again at pages 9 to 18 of Exhibit B [D.E. 1-2].

Complaint alleges that the Becks became fierce and outspoken critics of the DNC on social media and in 2019, Twitter permanently suspended both of their accounts in the wake of tweets critical of Vice President Kamala Harris's presidential campaign. Compl. ¶¶ 11-13.

Plaintiff goes on to allege that Harris's former press secretary was a high-level Twitter executive at the time the Becks' accounts were suspended. *Id*. ¶ 12. In October 2022, billionaire Elon Musk purchased Twitter, promising to address concerns that the social media company responsible for hosting the "digital town square" was increasingly suppressing free speech. *Id*. ¶ 1. Internal documents released after Musk's acquisition (the "Twitter Files") exposed intense coordination between Twitter and various government agencies, including the FBI, CIA, and Department of Defense as well as the Democratic Party, to censor discourse on the platform around select public issues including the 2020 presidential election, the Hunter Biden laptop controversy, and COVID-19. *Id*. ¶ 2.

On November 24, 2022, Twitter announced, through Musk, "a general amnesty to suspended accounts[.]" *Id.* ¶ 1. To be eligible, a suspended account must "have not broken the law or engaged in egregious spam[.]" *Id.* The amnesty was scheduled to begin the week of November 28, 2022, and Twitter has reinstated numerous accounts pursuant to the policy. *Id.* ¶¶ 1, 3.

Despite never having broken the law or engaging in spam – and never having even been accused of doing so by Twitter – the Becks' accounts have not been reinstated. *Id.* ¶¶ 14-15.

Plaintiff is the assignee of all of the Becks' rights pursuant to their respective contracts with Twitter. *Id.* ¶ 18.[2]

On March 9, 2023, Twitter removed the action to this Court, claiming diversity jurisdiction. On March 15, 2023, Twitter filed its Motion to Transfer [D.E. 5] and Motion to Dismiss ("MTD") [D.E. 6]. Plaintiff filed its Motion to Remand [D.E. 10] on March 28, 2023.

## Legal Standard

This District has articulated the standard of review for motions to dismiss under Rule 12(b)(6), in pertinent part, as follows:

> For the purposes of a motion to dismiss, the court must view the allegations of the Complaint in the light most favorable to plaintiff, consider the allegations of the Complaint as true, and accept all reasonable inferences therefrom. The complaint may be dismissed if the facts as pled do not state a claim to relief that is plausible on its face. At this stage, the Court is determining only whether the complaint adequately states causes of action, not whether those causes of action will ultimately succeed.

*In re Checking Account Overdraft Litig.*, 883 F. Supp. 2d 1251, 1253 (S.D. Fla. 2012). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank N.A.*, 225 F.3d 1228, 1230 (11th Cir. 2003) (internal citation and quotation marks omitted).

## Analysis

I.     **Because The Court Lacks Subject-Matter Jurisdiction, The Court Must Deny Twitter's Motion To Dismiss As Moot**

---

[2]     While Twitter calls Plaintiff's beliefs about why the Becks' accounts were suspended and not reinstated "misguided" (Motion to Dismiss at 1), it has persistently refused to offer any alternative explanation, including in its motion to dismiss.

It is axiomatic that a district court must possess subject-matter jurisdiction in order to decide a motion to dismiss for failure to state a claim.  *See Soldevilla v. On the Barrelhead, Inc.*, Case No. 19-CV-14462-MARRA, 2020 WL 13401897, \*1 (S.D. Fla. Apr. 13, 2020) ("failure to ensure that diversity jurisdiction exists before delving into merits of case may result in 'colossal waste of time and effort'" (quoting *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1228 (11th Cir. 2017)); *Dotson v. Elite Oil Field Servs., Inc.*, 91 F. Supp. 3d 865, 868 n.1 (N.D.W. Va. Mar. 4, 2015) ("It is generally improper for the Court to decide a Rule 12(b)(6) motion before ruling on a pending motion to remand."); *Arnaud v. Little Caesar Enters., Inc.*, Case No. ED CV 18-0316-DOC (KKx), 2018 WL 4772274, \*6 (C.D. Cal. Oct. 1, 2018) (denying motion to dismiss as moot upon granting motion to remand).

Here, Plaintiff has moved to remand based on Twitter's failure to satisfy its burden of proving, by a preponderance of evidence, that the amount of controversy is sufficient to establish diversity jurisdiction.  Hence, the Court cannot reach the merits of Twitter's Motion to Dismiss until it decides Plaintiff's Motion to Remand and in the absence of subject-matter jurisdiction, the Motion to Dismiss must be denied as moot.

## II.     Even If The Court Had Jurisdiction To Reach The Merits, Twitter's Motion To Dismiss Should Be Denied

Notwithstanding the absence of subject-matter jurisdiction and Plaintiff's pending Motion to Remand, Twitter's Motion to Dismiss lacks merit and should be denied.  As demonstrated below, Twitter has failed to demonstrate a single persuasive ground on which Plaintiff's claim could be dismissed.

### A.     Plaintiff Has Pled A Valid Claim For Breach Of Contract Based On Party Conduct That Modified The Written Agreement

Initially, Twitter argues that the terms of service on its website protect the company from suit, because they permit Twitter to suspend accounts "for any or no reason" and "without

6

liability," and there is no term which requires Twitter to reinstate any account.  MTD at 5-6.  The problem for Twitter is that Plaintiff's claim is based on the parties' conduct, not the terms of service, and courts have expressly rejected this argument in analogous circumstances.

Under California law, "An agreement to modify a written contract will be implied if the conduct of the parties is inconsistent with the written contract so as to warrant the conclusion that the parties intended to modify it." *Daughtery Co. v. Kimberly-Clark Corp.*, 14 Cal. App. 3d 151, 158, 92 Cal. Rptr. 120 (1971) (citation omitted) (reversing dismissal of breach-of-contract claim based on party conduct); *see also DDR Oceanside LLC v. Regal Cinemas, LLC*, Case No. 04-CV-1176 IEG (BLM), 2005 WL 8173077, *3 (S.D. Cal. Sept. 8, 2005).  In *Berenson v. Twitter, Inc.*, Judge Alsup applied this principle to reject Twitter's attempt to dismiss a breach-of-contract claim brought by a permanently suspended user.  2022 WL 1289049, at *2.  The court held that Twitter's post-user agreement announcement of a "five-strike policy" and the email correspondence of a company vice president could "amount to a modification of the contract," including the terms of service, because "the course of performance 'may supplement or qualify the terms of the agreement, or show a waiver or modification of any term inconsistent with the course of performance.'" *Id.* (quoting *Emps. Reinsurance Co. v. Super. Ct.*, 161 Cal. App. 4th 906, 920-21 (2008)).

Here, as alleged, Twitter modified its user agreements with the Becks when it announced a new policy of "general amnesty" applicable to their accounts under the policy's plain terms, and proceeded to reinstate numerous other facially eligible accounts pursuant to the same policy. Despite Twitter's insistence that it retains the ability suspend accounts and keep them muzzled "for any and no reason" no matter what statements the company makes and what actions it takes on the basis of those statements, its adoption of a "general amnesty" policy and failure to abide by the black-letter terms of that policy plainly overrides the language of the terms of service and

7

thoroughly supports Plaintiff's breach-of-contract claim based on party conduct modifying the operative agreement.  *See Berenson*, 2022 WL 1289049, at *2 ("Plaintiff plausibly avers that Twitter's conduct here modified its contract with plaintiff and then breached that contract by failing to abide by its own five-strike policy and its specific commitments set forth through its vice president.").[3]

Twitter's argument that tweets from its owner and CEO, Elon Musk, could not have modified the Becks' agreements fares no better.  *Berenson* held that a new content moderation policy regarding COVID-19 set forth on Twitter's blog along with e-mails from a Twitter vice president could modify Twitter's terms of service.  2022 WL 1289049, at *2.  If that is the case, then surely tweets coming directly from Twitter's owner and CEO setting forth a general amnesty policy in definite, unqualified terms along with Twitter's subsequent implementation of the policy could alter the same terms.  To put it simply, Twitter has no colorable argument for why the tweets from Musk should be treated any differently than the blog posts and emails that served to modify the user agreement in *Berenson*.

---

[3]     Indeed, as Judge Alsup also noted, "Any ambiguities in a contract like Twitter's terms of service are interpreted against the drafter, Twitter."  *Berenson*, 2022 WL 1289049, at *2 (citing *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016)).  Here, notwithstanding Twitter's wholesale reliance on the terms of service despite Plaintiff's well-pled allegations of modification by party conduct, there is no language in the TOS addressing **reinstatement** – which is the crux of this action – as opposed to suspension or termination.  Twitter's general amnesty policy is thus perfectly consistent with the TOS, Twitter's claims of contradiction aside, as well as the fact that California law authorizes modification by party conduct regardless of any inconsistencies with the written contract.

**B.      Plaintiff Is A Valid Assignee Of The Becks' Breach-Of-Contract Claims Against Twitter As A Matter Of Law**

Twitter also argues that Plaintiff cannot, or lacks standing to, state a claim because the Becks were barred from assigning their claims against Twitter under the terms of service.  But this is legally and factually incorrect.  Under California law, an agreement prohibiting an assignment of "rights" will not serve to bar assignment of a claim for breach of the agreement without specific language to that effect.  *Creditors Adjustment Bureau, Inc. v. IBT Media Inc.*, Case No. 19-cv-02305, 2019 WL 3082845, *2 (N.D. Cal. July 15, 2019) (citing *Gottlieb v. Alphabet Inc.*, Case No. 5:17-cv-06860-EJD, 2018 WL 2010976, *4 (N.D. Cal. Apr. 30, 2018); *SK Networks Co. Ltd. v. Bentley Forbes Holdings, LLC*, Case No. CV 12-08997 MMM (SHx), 2013 WL 12131715, *18–19 (C.D. Cal. Nov. 7, 2013).

Here, Twitter can only point to a very limited "anti-assignment clause" in the TOS – "Twitter gives you a personal, worldwide, royalty-free, *non-assignable* and non-exclusive license to use the software provided to you as part of the Services."  MTD at 8 (maintaining emphasis added).  On its face, the prohibition on assignment relates **strictly** to the user's license to use the software provided with Twitter's services, and has nothing whatsoever to do with other rights under the agreement with Twitter.  *See also Creditors*, 2019 WL 3082845, at *1 (anti-assignment provisions are strictly construed).  But even if it were a broad clause prohibiting the assignment of "rights" under the agreement, it would not pass muster under California's rule regarding the assignment of claims.  In short, Twitter has no serious argument that Plaintiff is not a valid assignee entitled to bring this case.

**C.      Section 230 Of The CDA Does Not Bar Contract Claims Like Plaintiff's**

Finally, Twitter argues it is entitled to immunity from Plaintiff's breach of contract suit under section 230 of the CDA.  But this extension of section 230 immunity is a bridge too far,

and the Ninth Circuit has held it so. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009) (no section 230 immunity where "Barnes does not seek to hold Yahoo liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached." ). *See also Berenson*, 2022 WL 1289049, *2 (no section 230 immunity for Twitter for breach of contract and promissory estoppel claims brought by permanently suspended user).

Here, because Plaintiff bases its suit on Twitter's breach of its agreements with the Becks and does not seek to hold Twitter liable as a publisher or speaker of third-party content, Twitter is not entitled to section 230 immunity under the CDA.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Twitter's Motion to Dismiss as moot or, in the alternative, deny Twitter's Motion to Dismiss on the merits.

DATED: March 29, 2023

RESPECTFULLY SUBMITTED,

/s/ Jared H. Beck
By: Jared H. Beck

**BECK & LEE TRIAL LAWYERS**
JARED H. BECK
Florida Bar No. 20695
ELIZABETH LEE BECK
Florida Bar No. 20697
8306 Mills Drive # 248
Miami, Florida 33183
Telephone:      (305) 789-0072
Facsimile:      (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2023, I electronically filed the foregoing

*PLAINTIFF DON'T TREAD ON US, LLC'S OPPOSITION TO DEFENDANT TWITTER, INC.'S MOTION TO DISMISS*

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document(s) are being served this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


/s/ Jared H. Beck_____
Jared H. Beck