**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Civil Case 1:23-cv-20943-KMM MOORE/LOUIS**

DON'T TREAD ON US, LLC, a Florida
limited liability company,

                Plaintiff,

v.

TWITTER, INC. a Delaware corporation,

                Defendant.

---

### REPLY IN SUPPORT OF MOTION TO TRANSFER

Plaintiff Don't Tread on Us, LLC ("DTOU") opposes transfer of this case to the Northern District of California, despite a mandatory forum selection clause requiring that all disputes be brought in California, on purely procedurally grounds – arguing that transfer is inappropriate in light of DTOU's pending Motion to Remand.  Tellingly, DTOU's opposition to Twitter's motion to transfer completely ignores the binding forum selection clause, and, despite Supreme Court precedent to the contrary, DTOU argues at length that this Court is required to rule on its motion to remand prior to ruling on the transfer motion. To prevent DTOU's continued tactics of forum shopping, and in the interest of judicial economy, this Court should transfer this action to the Northern District of California prior to ruling on DTOU's Motion to Remand.

### I.      The Court should address the Motion to Transfer first.

The Court has the power to consider and grant the pending motion to transfer without first deciding whether it has subject matter jurisdiction. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,* 549 U.S. 422, 425 429, 432 (2007*)*. This is because a decision to transfer pursuant to 28 U.S.C. § 1404(a) is not a decision "on the merits" that can only follow a jurisdictional determination. *See id.* In *Sinochem*, the Supreme Court held that a district court may dismiss a case

based on forum non conveniens without first determining its own jurisdiction. *Id.* The Court distinguished between merits adjudications, for which jurisdiction is essential, and procedural determinations, for which jurisdiction is not. *Id.* at 425, 431 ("Jurisdiction is vital only if the court proposes to issue a judgment on the merits." (citation omitted)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999) ("[A] court that dismisses on ... non-merits grounds... before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates ... separation of powers principles… ") (quoting *In re Papandreou*, 139 F.3d 247, 255 (D.C. Cir. 1998))). In *Sinochem*, the Court held that "a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that ... a foreign tribunal is plainly the more suitable arbiter of the merits of the case." *Sinochem*, 549 U.S. at 425.

Because § 1404(a) effectively codifies forum non-conveniens, courts have readily extended the holding of *Sinochem* to § 1404(a). For example, in *In re LimitNone*, LLC, 551 F.3d 572, 576-77 (7th Cir. 2008), the district court transferred a case from the Northern District of Illinois to the Northern District of California pursuant to § 1404(a) without first ruling on the plaintiff's motion to remand. Just like the case at hand, *In re LimitNone* involved contractual "forum-selection clauses providing that the 'exclusive venue for any dispute relating to [the] Agreement shall be in state or federal courts within Santa Clara County, California.'" *Id.* at 574. The Seventh Circuit held that the district court's transfer order, like the forum non-conveniens determination in *Sinochem*, did not constitute a decision on the merits:

> [In *Sinochem*], the Court held that a dismissal on the grounds of forum non conveniens was "a determination that the merits should be adjudicated elsewhere." *Sinochem*, 127 S. Ct. at 1192. It "does not entail any assumption by the court of substantive law-declaring power." Id. at 1192-93 (quoting *Ruhrgas*, 526 U.S. at 584-85). And as § 1404(a) is nothing more than a codification of the traditional forum non conveniens rules without the attendant disadvantages of outright

2

dismissal, see *Sinochem*, 127 S. Ct. at 1190-91 ..., it is appropriate to apply the same rules regarding the necessity of establishing jurisdiction to both.

*LimitNone*, 551 F.3d at 577.

    *LimitNone* dispels DTOU's argument that cases involving multidistrict litigation are "one of the narrow exceptions to the rule that motions to remand take priority over motions to transfer venue." (Response at 5). *See In re LimitNone*, 551 F.3d at 577-78 (affirming transfer based on contractual forum selection clause in intellectual property dispute before deciding remand motion). In fact, **even absent a forum selection clause**, a district court has discretion to rule on a forum non-conveniens motion and bypass and questions of subject-matter and personal jurisdiction. *See Aftab v. Gonzales*, 597 F.Supp.2d 76, 79 (D.D.C. Feb. 17, 2009) (granting a § 1404(a) motion to transfer based on the public interest of justice and the private interests of the parties and witnesses, while bypassing any ruling on subject matter jurisdiction, where there was no multidistrict litigation, and no forum selection clause). Put simply, the "rule" that DTOU describes does not exist. The Supreme Court has consistently held that "there is no mandatory sequencing of jurisdictional issues," and that "a federal court has leeway to deny audience to a case on the merits.'" *Sinochem*, 549 U.S. at 431 (quoting *Ruhrgas*, 526 U.S., at 285)

    Indeed, many district courts, both before *Sinochem* was decided and since, have chosen to decide and grant motions for transfer under 28 U.S.C. § 1404(a) while remand motions were simultaneously pending, often expressly transferring the remand motions to allow transferee courts to determine the appropriateness of remand under 28 U.S.C. § 1447. *See, e.g.*, *Doubletree Partners, L.P. v. LandAmerica Am. Title Co.*, 2008 WL 5119599, at *2 (N.D. Tex. Dec. 3, 2008) (electing to decide § 1404(a) venue-transfer motion before motion to remand); *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. 1:08-CV-029, 2008 WL 1836384, at *3 (E.D. Tex. Apr. 22, 2008) (same); *Lynn v. Purdue Pharma Co.*, No. Civ. 04-0300 LH/ACT, 2004 WL 1242765, at *2-4 (D.N.M.

June 7, 2004) (same); *Stewart v. May Dept. Store Co.*, No. Civ. A 02-2772, 2002 WL 31844906, at *2 n.1 & *3 (E.D. La. Dec. 12, 2002) (granting transfer motion while remand motion was pending, thereby transferring entire action, including pending motion to remand); *In re Vital Link Lodi, Inc.*, 240 B.R. 15, 17, 21-22 (Bankr. W.D. Mo. 1999) (deciding venue and refraining from ruling on pending motion to remand, deeming transferee court to be appropriate court to rule on that motion); *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1363-64 (M.D. Ala. 1998) (deciding § 1404(a) transfer motion before motion to remand, transferring pending motion to remand to the transferee court "along with the case").

DTOU relies on the Eighth Circuit's holding in *Integrated Health Services of Cliff Manor, Inc. v. THCI Company, L.L.C.*, 417 F.3d 953 (8th Cir. 2005) in support of its position that it is "apodictic" that court cannot transfer a case under 28 U.S.C. § 1404(a) unless it has subject-matter jurisdiction. Significantly, **that decision pre-dates *Sinochem***. Indeed, "there may be reason to doubt" *Integrated Health* and like cases in light of *Sinochem* "if the premise is the lack of judicial power to transfer a case prior to deciding a question of subject matter jurisdiction, given that the transfer is a non-merits determination." *Zavanna, LLC v. RoDa Drilling Co.*, 2009 WL 3720177, at *15 (D.N.D. November 3, 2009).

The *Regenicin* case relied on by DTOU is also inapposite. In *Regenicin*, the Northern District of Georgia described a three-part inquiry that district courts engage in in deciding whether transfer is appropriate under § 1404(a), the first of which is whether "venue and subject-matter jurisdiction are proper in the transferor court, i.e. the court in which the transfer motion is made?" *Regenicin, Inc. v. Lonza Walkersfield, Inc.*, 2014 WL 11930591, at *2 (N.D. Ga. May 1, 2014) at *2 (citing *Integrated Health*, 417 F. 3d at 957). The circumstances in *Regenicin*, however, did not involve a mandatory forum selection clause, and both parties in that case conceded that venue was

proper in both the transferor and transferee court – the only disputed issue was whether transfer was appropriate to serve the interests of justice and convenience. *Id.* at *4.

DTOU's reliance on *Clark v. Frontier Airlines, Inc.*, 2018 WL 4516000 (S.D. Iowa Aug. 1, 2018) is also misplaced. The court ruled on a motion to dismiss for lack of subject matter jurisdiction before a § 1404(a) transfer motion because it was "the less burdensome course," based on circumstances **where no mandatory forum selection clause was at issue**. *Id.* at 4. The court acknowledged it had discretion to decide either motion first under *Sinochem*, and criticized "[t]he Eighth Circuit's position [in *Integrated Health*] that a district court cannot transfer a case under § 1404(a) without subject matter jurisdiction," as "doubtful." *Id.*

Here, ruling on the Motion to Transfer prior to DTOU's Motion to Remand is clearly the less burdensome course. "The relative ease of determining venue before subject-matter jurisdiction is an issue of judicial economy." *In re Limit None*, 551 F.3d 576. When faced with a mandatory forum selection clause, "the issue of venue is fairly easy to resolve." *Id.* To the contrary, where DTOU's damages are "premised on the value of the Twitter account," a determination of "whether the amount in controversy requirement is satisfied in this case is intertwined with factual and legal issues raised by [DTOU's] claims." *PhoneDog v. Kravitz*, 2011 WL 5415612, at *5 (N.D. Cal. Nov. 8, 2011).

In sum - although courts must decide jurisdictional issues before addressing the merits of an action - issues such as transfer of venue may be decided before motions to remand, and often should be when a mandatory forum selection clause is at issue. "'[T]here is no federal law or statute, or judicial decision that requires this court to decide a motion to remand before it decides a motion to transfer.'" *Zampa v. JUUL Labs, Inc.*, 2019 WL 1777730, at *3 (S.D. Fla. April 23,

2019) (quoting *Gould*, 990 F. Supp. at 1362. Thus, the Court should exercise its power to transfer this action.

II.    **Transfer is required to prevent DTOU's forum shopping.**

DTOU opposes transfer on the grounds that, "Twitter has failed to meet is burden of establishing the amount in controversy exceeds $75,000," referring the Court to its Motion to Remand (Response at 4). The Motion to Remand in turn argues that, "there is no reason why this Court would look to cases from courts outside the Eleventh Circuit to resolve the issue of whether a civil cover sheet filed in Florida state court can serve as a basis for diversity jurisdiction in the Southern District of Florida." DTOU's suggestion that the Court should ignore the fact that "Federal courts in California have consulted civil cover sheets to analyze amount in controversy" (*See* Twitter's Notice of Removal at ¶ 11) highlights DTOU's forum shopping tactics. Despite the mandatory forum selection clause in Twitter's User Agreement mandating venue in San Francisco, California, DTOU brought this action in Florida, and now invites the Court to ignore California federal courts' interpretation of the amount in controversy requirement.

When a party's actions "create a strong suspicion of forum shopping," transfer should be effectuated to prevent rewarding the party for engaging in such actions. *See Mobil Oil Corp. v. W. R. Grace & Co.*, 334 F. Supp. 117, 131 (S.D. Tex. 1971); *accord Banga v. First USA, NA*, 2010 WL 727749, at *2 (E.D. Cal. Mar. 2, 2010). Here, DTOU's "obvious forum shopping merely adds weight to the other considerations favoring transfer." *Scheinbart v. Certain-Teed Prods. Corp.*, 367 F. Supp. 707, 711 (S.D.N.Y. 1973).

III.   **The amount in controversy requirement is met.**

Although the Court need not determine subject matter jurisdiction in order to decide the transfer motion, as addressed *supra*, this Court is nevertheless vested with subject matter jurisdiction over DTOU's claims. While it is true that civil cover sheets under Florida law are

traditionally not sufficient *in and of themselves* to justify removal of a state court action, here, the civil cover sheet is only one item supporting removal and should be considered with all of the additional evidence that DTOU's is seeking damages in excess of the $75,000.00 threshold.

It is not Twitter's position that removal is appropriate based on the simple fact that DTOU selected "over $100,000.00" on the civil cover sheet. (*See* Motion to Remand at 3). Instead, Twitter points the Court's attention to the civil cover sheet because, taken together with the allegations in the Complaint, and the theories pled therein, it is apparent that this amount in controversy exceeds $75,000.00.

DTOU's Motion to Remand focuses entirely on what evidence the Court can and cannot consider in determining the amount in controversy – emphasizing what it views as a different standard that Florida and California District Courts apply as to whether civil cover sheets can be considered. As DTOU would have it, this Court must completely ignore the civil cover sheet.

This misses the mark and ignores the bigger picture – it is apparent from the nature of DTOU's claims and the allegations in the Complaint that the amount in controversy is in excess of $75,000, which is corroborated by the civil cover sheet.

> Much has been written in this District on topics pertaining to the amount in controversy such as the persuasiveness of a pre-suit demand, the weight given to a failure to stipulate, and the use of awards in other cases as evidence. The Court could write at length on these topics and the varying opinions on what is or is not persuasive evidence. However, **recent Eleventh Circuit decisions promote a greater reliance on a court's judicial experience and common sense based on the evidence presented and the nature of the claims alleged in determining whether the jurisdictional threshold is reached.** *See* [*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754, 770 (11th Cir. 2010); *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-66 (11th Cir.2010)] … As such, the Court is of the view that "where the parties and the court know from their exercise of good sense and experience that the claim[s] exceed $75,000[,][t]here is no point in writing a law review article on the subject." *See Smith v. State Farm Fire & Cas. Co.*, 868 F.Supp.2d 1333, 1335 (N.D.Ala.2012).

*Cown v. Genesco, Inc.*, 2014 WL 3417656, at *3 (M.D. Fla. July 14, 2014) (emphasis added).

7

This court in *Digital Age Marketing Group, Inc. v. Sentinel Insurance Company Limited*, 504 F. Supp. 3d 1345 (S.D. Fla. 2020) applied the same judicial experience and common sense approach to a determination of the amount in controversy. In *Digital Age*, the court denied the plaintiff's motion to remand, noting that, "[w]hile Plaintiff repeatedly questions the admissibility of Defendant's evidence it does not put forth any evidence that would demonstrate that the amount in controversy is less than $75,000 or remains completely indeterminate." *Id.* at 1348. The court emphasized that not relying on judicial experience and common sense, "would permit a plaintiff to 'defeat federal jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no details on the value of the claim.'" *Id.* at 1347. (quoting *Roe*, 613 F.3d at 1064).

That is exactly what DTOU attempts to do. DTOU alleges injuries that, by its own its own description, are "unquantified by any dollar figure" (Motion to Remand at 10); and now seeks remand by repeatedly questioning the allegations and materials establishing the amount in controversy on removal, without putting forth any evidence of its own that would establish that the amount in controversy is less than $75,000. DTOU's questioning of the amount in controversy stands in stark contrast to its emphatic allegations about the prominence and importance of the Twitter accounts that were previously associated with Mr. and Mrs. Beck, including the allegation that "Beck & Lee's uses of social media was especially vital to the advocacy of their clients' cause" and that Mr. and Mrs. Beck's Twitter accounts "which had over 300,000 followers combined" were "a vital component of Beck & Lee's social media advocacy on behalf of its clients." Complaint ¶¶ 10-11. Further, DTOU alleges that Mr. and Mrs. Beck "continue to be excluded from the digital town square, subjected to unwarranted attacks on their reputation and character with no ability to respond, and have been significantly damaged in the in the ability to advocate for their

clients in their chosen profession." Complaint ¶ 15. As a result of Twitter's alleged failure to reinstate the Beck's Twitter accounts, DTOU seeks "damages, injunctive relief, prejudgment and post-judgment interests, court costs, and all other relief as may be necessary and proper."

Further, in addition to its claim for damages, DTOU seeks injunctive relief, presumably to require reinstatement of the Twitter accounts previously associated with Mr. and Mrs. Beck, which by their own admission, are of significant value to the Becks both personally and professionally. In an attempt to distinguish this action from *Phonedog v. Kravitz*, 2011 WL 5415612 (N.D. Cal. Nov. 8, 2011), a case addressing amount in controversy for purposes of subject matter jurisdiction surrounding the value of a Twitter account, DTOU attempts to argue that, "there is no damages model alleged in Plaintiff's complaint nor is there any type of methodology before the Court that could be used to value Plaintiff's claim for purposes of determining subject-matter jurisdiction." Motion to Remand at ¶ 10, n.4. The fact that there is no damage model before the Court at this stage does not prevent Twitter from removing DTOU's claim, and DTOU's argument is a disingenuous attempt to ignore its own allegations about the Twitter accounts at issue in this action.

While Twitter denies that DTOU is entitled to any relief, based on the allegations in the Complaint, relevant authority addressing the very same question, and DTOU's own selection of a monetary value for its claim on the Civil Cover Sheet it filed, the amount in controversy exceeds $75,000. The Court should use its judicial experience and common sense in making a determination that the amount in controversy exceeds $75,000, and should not entertain DTOU's purposeful attempt to avoid federal jurisdiction as will be explained in further detail in Twitter's forthcoming response to DTOU's motion to remand.

As such, this Court has the authority to transfer the case to the Northern District of California without first considering DTOU's remand motion on that basis as well.

## **CONCLUSION**

For the reasons set forth above and in the motion to transfer, the Court should enter an order transferring this action to the United States District Court for the Northern District of California.

Respectfully submitted,

 /s/Joshua C. Webb
Joshua C. Webb (FBN: 051679)
josh.webb@hwhlaw.com
val@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
(813) 221-2900 (Facsimile)
*Attorneys for Defendant*

18087314v1