**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Civil Case 1:23-cv-20943-KMM MOORE/LOUIS**

DON'T TREAD ON US, LLC, a Florida
limited liability company,

           Plaintiff,

v.

TWITTER, INC. a Delaware corporation,

           Defendant.

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO**
**REMAND AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff DTOU's Motion to Remand (ECF No. 10) should be denied for several reasons. As an initial matter, the Court should abstain from ruling on remand in favor of transferring this action to the Northern District of California based on the mandatory forum selection clause contained in the Twitter User Agreement. For reasons thoroughly addressed in Twitter's Motion to Transfer (ECF No. 5) and Reply (ECF No. 14), the Court should first rule on the threshold issue of improper venue, as remanding this case would only reward DTOU's forum shopping tactics.

As to the substance of DTOU's Motion to Remand, it glaringly omits any statement or suggestion that DTOU **is not** seeking damages in excess $75,000. Instead, DTOU focuses entirely on what evidence it suggests this Court can and cannot consider in determining the amount in controversy. But DTOU cannot avoid its own allegations in the Complaint and the relevant facts and decisional authority which establish that the amount in controversy exceeds $75,000.

A. **The Standard for Removal Includes Evaluating the Parties'
Allegations Along With the Relevant Facts and Corresponding
Reasonable Deductions, Inferences and Other Extrapolations.**

A defendant's notice of removal may assert the amount in controversy if the complaint seeks (a) nonmonetary relief or (b) a money judgment and the state practice permits recovery in excess of the amount demanded. 28 U.S.C. § 1446(c)(2)(A)(ii). As the Supreme Court has held, the notice "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *Goldstein v. GFS Market Realty Four, LLC,* No. 16-CV-60956, 2016 WL 5215024, at *4 (S.D. Fla. Sept. 21, 2016) ("Following the rule in *Dart Cherokee*, this Court finds the Amended Notice of Removal plausibly alleges that the amount in controversy exceeds the jurisdictional threshold.") "When the plaintiff has failed to specify the amount of damages sought, the burden on the defendant is somewhat lower." *George v. Marriott Senior Living Services, Inc.*, No. 01–8707–CIV, 2001 WL 1757181, at *2 (S.D. Fla. Nov. 14, 2001). In such a case, the preponderance of the evidence standard applies. *Id.*

"Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Roe v. Michelin N. Am. Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (quoting *Pretka v. Kolter City Plaza Two, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)). Defendants may make "specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with [such deductions, inferences, and extrapolations.]" *Pretka*, 608 F.3d at 754. "The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.*

"Put simply, a district court need not 'suspend reality or shelve common sense in determining whether the face of a complaint ... establishes the jurisdictional amount.'" *Roe*, 613 F.3d at 1062. (quoting *Pretka*, 608 F.3d at 770. *see also Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir.2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). "Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062. Despite DTOU's contrary assertion, "[t]here is no presumption against federal jurisdiction in general, or removal in particular." *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011).

B.      <u>**The Court Should Reject DTOU's Evidentiary Arguments.**</u>

DTOU's principal argument is an effort to distance itself from its own allegations and information provided in instituting this action. But this disingenuous approach of emphasizing the alleged significance of this action when suitable, and temporarily walking away when now convenient should be rejected because it misses the point of the removal of this action entirely. Additionally, this argument wrongly seeks to have the Court refuse use of its own experience and common sense in evaluating the amount in controversy in the context of DTOU's claim. While it is true that civil cover sheets under Florida law are traditionally not sufficient *in and of themselves* to justify removal of a state court action, here, the civil cover sheet is only one piece of information supporting removal and should be considered with the additional information demonstrating that DTOU is seeking damages in excess of the $75,000.00 threshold.

DTOU's suggestion that the Court should ignore the civil cover sheet altogether misses the mark and ignores the bigger picture – that it is apparent from the nature of DTOU's claims and the allegations in the Complaint that the amount in controversy is in excess of $75,000. As

noted in Twitter's reply to support transfer (ECF No. 14), it is not Twitter's position that removal is appropriate based on the simple fact that DTOU selected "over $100,000.00" on the civil cover sheet as DTOU argues. (*See* ECF No. 10 at *3).  Instead, Twitter directs attention to the civil cover sheet because, taken together with the allegations in the Complaint, it readily corroborates that the amount in controversy exceeds $75,000.00.

The relevant standard does not require that the Court reject certain kinds of information out of hand, instead:

> **[R]ecent Eleventh Circuit decisions promote a greater reliance on a court's judicial experience and common sense based on the evidence presented and the nature of the claims alleged in determining whether the jurisdictional threshold is reached.** *See Pretka*, 608 F.3d at 754, 770; *Roe*, 613 F.3d at 1061-66 … As such, the Court is of the view that "where the parties and the court know from their exercise of good sense and experience that the claim[s] exceed $75,000[,][t]here is no point in writing a law review article on the subject." *See Smith v. State Farm Fire & Cas. Co.*, 868 F.Supp.2d 1333, 1335 (N.D.Ala.2012).

*Cowan v. Genesco, Inc.*, No. 3:14–cv–261–J–34JRK, 2014 WL 3417656, at *3 (M.D. Fla. July 14, 2014) (emphasis added).

In *Digital Age Marketing Group, Inc. v. Sentinel Insurance Company Limited*, 504 F. Supp. 3d 1345 (S.D. Fla. 2020), the court followed this approach and applied its judicial experience and common sense in determining the amount in controversy. There, the court denied plaintiff's motion to remand noting that, "[w]hile Plaintiff repeatedly questions the admissibility of Defendant's evidence it does not put forth any evidence that would demonstrate that the amount in controversy is less than $75,000 or remains completely indeterminate." *Id.* at 1348. The court emphasized that not relying on judicial experience and common sense, "would permit a plaintiff to 'defeat federal jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no details on the value of the claim.'" *Id.* at 1347. (quoting *Roe*, 613 F.3d at 1064).

4

DTOU is attempting to avoid jurisdiction in precisely that manner. DTOU alleges injuries that, by its own more recent description in the motion to remand, are "unquantified by any dollar figure." (ECF No. 10 at *10.) DTOU seeks remand by repeatedly questioning the information supplied on removal to establish the amount in controversy, without putting forth any evidence of its own that would establish that the amount in controversy is less than $75,000.

### C.     <u>The Amount in Controversy Exceeds $75,000.</u>

The common-sense evaluation of DTOU's allegations in the Complaint of supposedly significant harm, as well as the corresponding facts combined with decisional authority addressing the potential monetary value of Twitter accounts with followers, demonstrate that the amount in controversy in this action exceeds $75,000 for the purpose of establishing jurisdiction. As explained *supra*, that conclusion is corroborated by DTOU's selection of "over $100,000.00" on its civil cover sheet. The Court should reject DTOU's invitation to shelve common sense in support of DTOU's forum shopping.

DTOU alleges that "Beck & Lee's use of social media was especially vital to the advocacy of their clients' cause" and that the Twitter accounts associated with Mr. and Mrs. Beck, "which had over 30,000 followers combined," were "a vital component of Beck & Lee's social media advocacy on behalf of its clients." (ECF No. 1-1 at *11-12, ¶¶ 10-11.) Additionally, DTOU alleges that Mr. and Mrs. Beck "continue to be excluded from the digital town square, subjected to unwarranted attacks on their reputation and character with no ability to respond, and have been significantly damaged in the in the ability to advocate for their clients in their chosen profession." (ECF No. 1-1 at *13, ¶ 15.) As a result of Twitter's alleged refusal to reinstate the Twitter accounts associated with Mr. and Mrs. Beck, DTOU seeks "damages, injunctive relief, prejudgment and post-judgment interest, court costs, and all other relief as may

be necessary and proper." (ECF No. 1-1 at *15.)

In addition to its claim for damages, DTOU seeks injunctive relief, presumably to require that Twitter reinstate the Twitter accounts associated with Mr. and Mrs. Beck, which by DTOU's own allegations, are of significant value to the Becks both personally and professionally. (ECF No. 1-1 at *11-13, ¶¶ 10-11.)[1] "For amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000). (quoting *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 218–20 (11th Cir.1997)).

DTOU attempts to distinguish this action from *Phonedog v. Kravitz*, No. C 11–03474 MEJ, 2011 WL 5415612 (N.D. Cal. Nov. 8, 2011), a case addressing amount in controversy for purposes of subject matter jurisdiction surrounding the value of a Twitter account, by superficially arguing that, "there is no damages model alleged in Plaintiff's complaint nor is there any type of methodology before the Court that could be used to value Plaintiff's claim for purposes of determining subject-matter jurisdiction." (ECF No. 10 at *10, n.4.) The fact that there is no particular damage model before the Court at this stage does not prevent Twitter from removing DTOU's claim. DTOU's argument is a just another attempt to ignore its own allegations about the Twitter accounts at issue in this action. For the reasons explained in Twitter's motion to dismiss (ECF No. 6) and reply (ECF No. 15), among other reasons, DTOU cannot recover any damages in this action. But *Phonedog* is relevant here because it shows a

---

[1] On their law firm website, Mr. and Mrs. Beck tout their success of recovering millions of dollars on behalf of their clients and offering contingency fee arrangements -- http://www.beckandlee.com/ -- which potentially further underscores DTOU's allegation of "significant[] damage[]" in the Complaint as supporting the requisite amount in controversy in this action. (Compl. at ¶ 15, ECF No. 1-1 at *13.)

court using the appropriate common-sense approach to determine that the amount in controversy was satisfied by considering the number of followers for a Twitter account and "industry standard" monetary figures. 2011 WL 5415612 at *3-5. The court found the amount in controversy was satisfied when a Twitter account only had 17,000 followers. *Id.* at *3. Here, DTOU alleges in its Complaint that the subject Twitters accounts have over 30,000 followers, clearly more than the 17,000 the court in *Phonedog* found was necessary to satisfy the amount in controversy. (ECF No. 1-1 at *12, ¶ 11.)[2] The assertion that the requisite amount in controversy exists in this case based on DTOU's own allegations and related facts is plausible and supported by particularly relevant authority.

Furthermore, DTOU's refusal to provide any calculation or estimate of its own damages demonstrates its forum shopping tactics. Not only did DTOU file a lawsuit in Florida in violation of the mandatory forum selection clause, it now seeks to avoid federal jurisdiction through intentionally opaque damage allegations. Even when Twitter sought to obtain the presuit "requests for reinstatement" of accounts alleged by DTOU in the Complaint (ECF No. 1-1 at *13, ¶ 15), DTOU's counsel responded that Twitter and its counsel should "Get them from John Quinn. I don't get paid to work for you," among other dismissive statements. While DTOU ultimately provided the materials nearly a week later, the responses from its counsel made it evident that further efforts to confer would be fruitless.

Against the entirety of that backdrop, it is particularly notable that the Civil Cover Sheet filed by DTOU lists the "Amount of Claim" as "over $100,000.00." (ECF No. 1-1 at *3.)

---

2 This relevant comparison with *Phonedog*, underscores the difference in assessing the alleged injuries here as opposed to in *Chase v. Holiday CVS, LLC*, No. 22-cv-20752-BLOOM/Otazo-Reyes, 2022 WL 2135446 at *3 (S.D. Fla. May 13, 2022), where "Defendant [was] unable to assign dollar figures to Plaintiff's claimed injuries to meaningfully argue that the amount in controversy exceeds $75,000.00."

Although DTOU alleges in the Complaint that the value of the relief it is seeking exceeds only $50,000.00, DTOU went much further with its selection in the Civil Cover Sheet, skipping over five other options of lower ranges of monetary value, four of which would have squarely indicated an amount in controversy of less than $75,000. (*Id.*) This type of information is assessed by district courts in California (where this action should be transferred) when considering the amount in controversy. *See Mendenhal v. Christensen*, 16-cv-04232-JSC, 2016 WL 5339710, at *2 (N.D. Cal. Sept. 1, 2016) (finding that civil cover sheet indicating plaintiff sought $222,684 in damages satisfied amount in controversy requirement and dismissing on other grounds); *Deutche Bank Nat. Trust Co. v. Cambron*, 12-1901-EDL, 2012 WL 1712035, at *3 (N.D. Cal. May 12, 2012) (recommending remand where the complaint stated the demand did not exceed $10,000.00 and the civil cover sheet indicated demand was $25,000 or less).

Though ultimately DTOU is not entitled to any relief from this action, based on the allegations in the Complaint and surrounding facts, relevant authority addressing the very same question, and DTOU's own selection of a monetary value for its claim on the Civil Cover Sheet it filed, the amount in controversy exceeds $75,000.

### D.    DTOU is Not Entitled to Attorney's Fees.

"An order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c) (emphasis added).  However, "the court may only exercise its discretion where the removing party lacked an objectively reasonable basis for seeking removal." *Siman v. Ocean Bank, N.A.*, No. 1:15-cv-24258-KMM, 2016 WL 739659 at *5 (S.D. Fla. Feb. 25, 2016) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

As the Supreme Court explained in *Martin*:

The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.  In light of these "'large objectives,' " the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, *when an objectively reasonable basis exists, fees should be denied*.  In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

546 U.S. at 140-41 (internal citations omitted) (emphasis added).

Even if this Court agrees that the instant action should be remanded, Twitter's basis for removal was objectively reasonable, especially in light of the authority it relied on providing that civil cover sheets can be considered in determining the amount in controversy. *See, e.g.*, *Walcott v. Ferrelgas, Inc.*, No. 6:21-cv-154-GAP-DCI, 2021 WL 3518204, at *3, n.4 (M.D. Fla. March 8, 2021) (denying fees under § 1447(c) where removing party "relied on one side of an intracircuit split of authority" and noting that such "reliance constitutes an objectively reasonable basis to seek removal."). Given the information available, and the mandatory forum in the Northern District of California, the timing of removal here was also objectively reasonable. *See, e.g., Ceuvas v. Ford Motor Co.*, No. 22-1520-DMG, 2022 WL 1487178, at * 3 (C.D. Cal. May 11, 2022) (examining contents of civil cover sheet to determine whether removal was necessary and timely); *VNA of the Treasure Coast, Inc. v. Am. Alternative Ins. Corp.*, No. 10-14283-CIV-MOORE/LYNCH, 2011 WL 13224907, at *3 (S.D. Fla. Feb. 8, 2011) (awarding fees under 28 U.S.C. § 1447(c) as result of late removal).

Moreover, DTOU is represented by Mr. and Mrs. Beck, who purportedly assigned their rights to DTOU under their "contractual relationships with Twitter." (ECF No. 1-1 at *12, 14, ¶¶ 11, 18.). DTOU appears to be an entity formed for the sole purpose of pursuing this action

(ECF No. 1 at *2, ¶ 4), and is effectively a *pro se* litigant, not incurring attorney's fees as an expense in the prosecution of this motion. *See Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (refusing to grant *pro se* party attorney's fees as sanctions under Rule 11 because party was not incurring attorney's fees as expenses).

The removal of this action from state court was objectively reasonable, and no other unusual circumstances exist under which fees should be awarded. As such, DTOU's request for attorney's fees should be denied.

### E. <u>Conclusion</u>

Twitter has made specific factual allegations, supported by evidence and information that, combined with relevant decisional authority and reasonable extrapolations, demonstrate by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. The Court has jurisdiction over this case under 28 U.S.C. § 1332(a)(1), and DTOU's motion to remand should be denied.

Respectfully submitted,

 /s/Joshua C. Webb
Joshua C. Webb (FBN: 051679)
josh.webb@hwhlaw.com
val@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
(813) 221-2900 (Facsimile)
*Attorneys for Defendant*

18106971v1

10