UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:23-cv-20943-KMM MOORE/LOUIS

DON'T TREAD ON US, LLC,

    Plaintiff,

vs.

TWITTER, INC.,

    Defendant.
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND AND REQUEST FOR ATTORNEYS' FEES AND COSTS**

Plaintiff, DON'T TREAD ON US, LLC ("DTOU" or "Plaintiff"), by and through undersigned counsel and pursuant to 28 U.S.C. § 1447, hereby files its Reply in Support of Motion to Remand and Request for Attorneys' Fees and Costs:

**I.   The Court Is Obligated To Inquire Into Its Subject-Matter Jurisdiction And Resolve Plaintiff's Remand Motion Prior To Considering Any Other Motions**

First, the Court should reject Defendant Twitter, Inc.'s ("Defendant's" or "Twitter's")[1] invitation to place the cart before the horse and ignore the well-established obligation to examine the basis for the Court's own subject-matter jurisdiction (as well as Plaintiff's motion to

---

[1] According to the Amended Rule 7.1 Disclosure Statement [D.E. 13] filed April 5, 2023, "Twitter, Inc. has been merged into X Corp. and no longer exists." Nonetheless, Defendant continues to refer to itself as "Twitter" in its filings. For the sake of consistency, Plaintiff will do so as well.

1

remand), and proceed to rule instead on Twitter's venue transfer motion. On its face, and even outside the context of Plaintiff's remand motion, this request contravenes well-established law: indeed, "[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level." *Garcia v. AH Ent., Inc.*, No. 1:22-cv-22858-KMM, 2022 WL 6671727, *1 (S.D. Fla. Oct. 3, 2022) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

In its Reply in Support of Motion to Transfer ("Transfer Reply") [D.E. 14], Twitter relies heavily on *Sinochem International Co. v. Malay International Shipping Corp.*, 549 U.S. 422 (2007). *See* Transfer Reply at 1-4. However, that opinion actually undermines Twitter's position. A core holding of *Sinochem* is that a district court may consider a *forum non conveniens* motion prior to resolving the basis for its own subject-matter jurisdiction in only extremely unusual circumstances, none of which are present here. Twitter's desire for the Court to set aside Plaintiff's remand motion while deciding Twitter's venue transfer motion is simply not consistent with *Sinochem* or the well-worn axiom that a federal court must examine, even *sua sponte*, the basis for its own subject-matter jurisdiction and remand the case when absent. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409, 411 (11th Cir. 1999) ("A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking. . . . Moreover, a federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court.").

In *Sinochem*, the Supreme Court addressed the authority of a district court to dismiss an action under *forum non conveniens* without resolving whether it had subject-matter jurisdiction or personal jurisdiction over the defendant. *Sinochem*, 549 U.S. at 422. It held that if "a court

can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground." *Id.* at 436. "In the mine run of cases, the Supreme Court wrote, "jurisdiction 'will involve no arduous inquiry' and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum 'should impel the federal court to dispose of [those] issue[s] first.'" *Id.* (quoting *Ruhrgas*, 526 U.S., at 587–588). The case before it, however, comprised a narrow exception to the rule because "subject-matter jurisdiction presented an issue of first impression in the Third Circuit," and the personal jurisdiction inquiry required burdensome discovery to resolve. *Sinochem*, 549 U.S. at 435. Accordingly, and because there were proceedings "long launched in China" to resolve the parties' dispute, the district court could deviate from the general rule prioritizing jurisdictional inquiries and dismiss on *forum non conveniens* grounds without resolving jurisdiction, to serve judicial economy. *Id.* at 435-36.

  Even assuming *arguendo* that *Sinochem* can and should be applied in the context of a § 1404(a) motion,² it entirely supports prioritizing Plaintiff's motion to remand. The subject-

---

²  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) ("Although [§ 1404(a)] was drafted in accordance with the doctrine of *forum non conveniens . . .*, it was intended to be a revision rather than a codification of the common law." (citations omitted)). Twitter cites *In re LimitNone, LLC*, 551 F.3d 572, 576-77 (7th Cir. 2008) as a court applying *Sinochem* to a § 1404(a) motion, but *LimitNone*, including its holding that a district court can effect a § 1404(a) transfer before assuring itself of jurisdiction, has been criticized by a sister circuit and conflicts with the slew of courts prioritizing remand motions over transfer motions. *See Whitaker v. Monroe Staffing Servs., LLC*, 42 F. 4th 200, 208 & n.4 (4th Cir. 2022) ("We therefore conclude that the general rule of [*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)] applies, and

matter jurisdiction analysis here involves "no arduous inquiry" and requires no discovery (nor has any discovery been requested). Put simply, the factors required under *Sinochem* to reverse the usual order of adjudication are nowhere to be found.

Furthermore, *Sinochem* positively demonstrates just how untenable Twitter's position is. As part of the *forum non conveniens* analysis, the district court was required to assess whether the alternative forum in China "has jurisdiction to hear the case." *Sinochem*, 549 U.S. at 429 (citations, internal quotation marks, and textual alteration omitted). By the same token, a § 1404(a) transferor court must determine that the transferee court has subject-matter jurisdiction before effecting a transfer. *Fruitstone v. Spartan Race, Inc.*, 464 F. Supp. 3d 1268, 1277 (S.D. Fla. 2020). Thus, even if this Court were to rule on the transfer motion first, it would still have to determine whether federal jurisdiction exists as part of the analysis – which is the identical inquiry under the remand motion. Twitter's request, as such, leads to no judicial efficiency gains whatsoever but invites judicial waste.

---

that the district court should have assured itself of jurisdiction before interpreting and applying the forum selection clause."); *In re Caesars Ent. Operating Co.*, 588 B.R. 233, 237 (9th Cir. 2018) ("Most courts, when faced with concurrent motions to remand and transfer, resolve the motion to remand prior to, and/or to the exclusion of, the motion to transfer. . . . Only in rare circumstances should transfer motions be considered before remand motions." (internal quotation marks and citations omitted)). Moreover, *LimitNone* was a decision on a mandamus petition that took pains to limit its holding. *See LimitNone*, 551 F.3d at 578 ("Our holding today should not be read to suggest that district courts may in every case decide venue in advance of subject-matter jurisdiction without due consideration of whether it is advisable to do so."; "reversing the usual order of" jurisdiction and venue "requires sound prudential justification").

**II.     Twitter Has Not Met Its Burden To Prove That The Amount In Controversy Exceeds $75,000**

In its Response in Opposition to Plaintiff's Motion to Remand ("Response") [D.E. 16], Twitter fails to meaningfully contend with the legal framework that controls the remand analysis: *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316 (11th Cir. 2001) and *Chase v. Holiday CVS, LLC*, Case No. 22-cv-20752-BLOOM/Otazo-Reyes, 2022 WL 2135446 (S.D. Fla. May 13, 2022). These cases stand for the proposition that "a plaintiff's allegations of extensive injuries in the complaint are insufficient to establish the amount in controversy." *Id.* at *3. But the "plaintiff's allegations of extensive injuries in the complaint" is all Twitter has proffered to meet its evidentiary burden, along with the civil cover sheet. *Chase* rejected this very approach, and so should this Court. *See id.* ("[T]he Court determines that Defendant has failed to meet its burden by a preponderance of the evidence through the Civil Cover Sheet and Plaintiff's alleged injuries.").

Whereas Twitter relies on *Digital Age Marketing Group, Inc. v. Sentinel Ins. Co. Ltd.*, 504 F. Supp. 3d 1345 (S.D. Fla. 2020), the case actually highlights the deficiency in Twitter's evidentiary presentation. There, the court denied a motion to remand because the defendant **actually supplied evidence** to support an amount in controversy over $75,000. *See id.* at 1346 n.1 ("Defendant Sentinel calculated the $82,290 figure by taking Plaintiff's annual sales figure from an Experian report on Plaintiff and multiplied this figure, $633,000, by the percentage of the year Plaintiff's complaint alleged it was closed, 13%."). No one disputes that a court should use "judicial experience and common sense" in assuring that the jurisdictional threshold is

5

satisfied, but here, Twitter has failed to provide any comparable evidence to assist the Court in its task.[3]

Twitter's vain attempt to bootstrap a damages model to the Court's analysis through citation of an unpublished California district court order does not cure the evidentiary lacuna. As explained in Plaintiff's remand motion, *Phonedog v. Kravitz*, No. C 11-03474 MEJ, 2011 WL 5415612 (N.D. Cal. Nov. 8, 2011), is inapposite because the damages model and its accuracy

---

[3] While the law precludes Twitter from relying exclusively on Plaintiff's allegations and the civil cover sheet, Twitter's inferences from the allegations are also devoid of commonsense and greatly exaggerated. As alleged in the state-court Complaint, the two suspended accounts at issue were used in connection with advocacy in a single case, *Wilding v. DNC Services Corp.*, 941 F.3d 1116 (11th Cir. 2019), *cert denied by Wilding v. DNC Servs. Corp.*, 140 S.Ct. 2828 (2020). *See* Compl. ¶¶ 8-10. That litigation did not result in a favorable judgment or settlement for the plaintiffs; Beck & Lee and its co-counsel earned no compensation from the matter and ended up losing their out-of-pocket costs. *See id.* ¶ 8; Declaration of Elizabeth Lee Beck ("E. Beck Decl.") (**Exhibit 1** hereto) ¶ 3. Needless to say, Beck & Lee's public advocacy efforts, while harmonious with their clients' interests as understood by the district court, could not have made a difference to the outcome of the case, which was dismissed on standing grounds. *See Wilding v. DNC Servs. Corp.*, No. 16-61511-CIV, 2017 WL 6345492, *3 (S.D. Fla. Aug. 25, 2017) (Zloch, J.) ("To the extent Plaintiffs wish to air their general grievances with the DNC or its candidate selection process, their redress is through the ballot box, the DNC's internal workings, **or their right of free speech**—not through the judiciary." (emphasis added)). Twitter's strained attempt to tie the accounts to Beck & Lee's general legal practice beyond *Wilding* does not comport with the allegations or the facts.

were pled in the plaintiff's complaint and thus the court had to take the model as true on a facial challenge to subject-matter jurisdiction brought by the defendant.  However, even if this model were properly before the Court and it were accompanied by any indicia of accuracy (which it is not), it would plainly have no bearing on this case.  For one, this is not a lawsuit brought by a company that reviews mobile products and services against a former employee for misappropriating its Twitter account for eight months.  *See id.* at \*1.  The Twitter accounts at issue here belong to two attorneys; they were mainly used for social and political commentary as well as public advocacy in connection with one unprofitable litigation against the Democratic National Committee, and otherwise did not have a commercial purpose.  *See* footnote 3, *supra*.  Plainly, the "industry standards" governing the *Phonedog* model do not apply here.  Furthermore, for jurisdictional purposes, Plaintiff's damages are confined to a period of less than two months, *i.e.*, the day the amnesty was announced until the date of filing the Complaint.  If there is any value to the accounts (which presumably could be unsuspended by pushing a button or two at Twitter headquarters, as many thousands of accounts already have pursuant to Twitter's amnesty policy), it is squarely in the domain of speech, which is notoriously hard to value.  *Cf. Celli v. City of Augustine*, 214 F. Supp. 2d 1255, 1262 (M.D. Fla. 2000) ("it is difficult indeed to put a monetary value on an intangible right as significant as free speech"; approving jury award of $23,500).

In any event, Twitter (which presumably has access to data measuring how members of its userbase value their free accounts) chose to supply **no evidence** to supplement its reliance on the civil cover sheet and Plaintiff's general allegations of injury.  Pursuant to decisional authority from this District and the standard applied by the Eleventh Circuit in *Williams*, Plaintiff's motion to remand should be granted.

### III. Plaintiff Is Entitled To Recover Its Attorneys' Fees And Costs From Twitter Pursuant To 28 U.S.C. § 1447(c)

While Twitter repeatedly accuses Plaintiff of "forum shopping," ironically, it is Twitter which lodged this case in a federal forum without evidence of federal jurisdiction. Despite having the opportunity to submit "affidavits, declarations, or other documentation" to fulfill its evidentiary burden, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010), Twitter chose instead to place its exclusive reliance on a Florida state civil cover sheet and the Complaint's general allegations of injury untethered to a dollar amount. As discussed, this District roundly rejected the same approach to removal in *Chase v. Holiday CVS, LLC*, which found it to be inconsistent with the Eleventh Circuit's framework as articulated in *Williams v. Best Buy Co., Inc.* Indeed, despite the fact that the evidentiary burden lies squarely with Twitter as the removing defendant, it was Plaintiff that submitted evidence regarding the amount-in-controversy, producing correspondence showing it never demanded even a penny in its pre-suit dealings with Twitter's counsel.[4]

---

[4] Twitter makes the bizarre claim that Plaintiff's counsel's response to an email from Twitter's counsel requesting documents without propounding a discovery request somehow impeded Twitter's ability to confer with Plaintiff regarding the amount in controversy. *See* Response at 7. This makes absolutely no sense. Not only did Plaintiff's counsel provide the requested documents (which show that Plaintiff never made any payment demand in its pre-suit correspondence with Twitter), but Plaintiff's counsel subsequently conferred by telephone with Twitter's counsel – at the latter's request. Not once did Twitter's counsel raise the issue of the amount in controversy or the quantity of damages sought by Plaintiff. E. Beck Decl. ¶ 4.

"[T]he intent of § 1447(c) is to reimburse Plaintiffs who have incurred expenses in attacking improper removals," and the statute does not require a showing of bad faith but only that the removal lacked an objectively reasonable basis. *Martyak v. Martyak*, 378 F. Supp. 2d 1365, 1369 (S.D. Fla. 2005) (citations, internal quotation marks, and textual alterations omitted); *Rae v. Perry*, 392 Fed. Appx. 753, 754 (11th Cir. Aug. 16, 2010). Here, an award of fees and costs to Plaintiff is appropriate; Twitter's removal attempt was foreclosed by clear precedent from the Southern District of Florida and the Eleventh Circuit, and there is no "intracircuit split of authority" as Twitter disingenuously claims. Response at 9; *see also Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993) ("the propriety of the defendant's removal continues to be central in determining whether to impose fees"); *Tran v. Waste Mgmt., Inc.*, 290 F. Supp. 2d 1286, 1296 (M.D. Fla. 2003) (awarding fees and costs where removal attempt contravened Eleventh Circuit precedent); *Rae*, 392 Fed. Appx. at 756 (approving award of fees and costs where the defendant "failed to present evidence that showed by a preponderance of the evidence that the compensatory and unspecified damages in the complaint, including punitive damages and attorneys' fees, alone or combined, met the jurisdictional amount. [The defendant's] calculations were based on his own speculation, and therefore, were not objectively reasonable.").

Finally, Twitter's assertion that Plaintiff is "effectively a *pro se* litigant" and thus barred from recovering under § 1447(c) is simply wrong. If Plaintiff were *pro se*, then it could not be litigating this action because, "It is a well-settled principle of law that a corporation cannot appear *pro se* and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385-86 (11th Cir. 1985). Here, Plaintiff is a corporation being represented by two attorneys who are also members and managers of the corporation. There is no legal principle which prevents the recovery of attorneys' fees in such circumstances. To the contrary, courts have approved attorneys' fees awards in analogous contexts. *See Treasurer, Trs. of Drury Indus., Inc.*

9

*Health Care Plan & Tr. v. Goding*, 692 F.3d 888, 898 (8th Cir. 2012) ("We join the Fourth, Fifth, and D.C. Circuits to hold that, where an attorney represents his or her own firm, [*Kay v. Ehrler*, 499 U.S. 432 (1991)] does not forbid the award of attorneys' fees."); *Shelton v. Schar*, No. 5:17-cv-86-Oc-PGBPRL, 2018 WL 6261485, *2 n.5 (M.D. Fla. Oct. 18, 2018) ("While the Eleventh Circuit does not appear to have addressed this issue, at least four other Circuit Courts of Appeal have determined that law firms represented by their own attorney members are eligible for an award of fees because the law firm is a separate entity from its attorneys, analogous to a corporate party represented by in-house counsel."); *Nwaneri v. Quinn Emanuel Urquhart Oliver & Sullivan, LLP*, 250 A. 3d 1070 (D.C. Ct. App. 2021) (awarding fees, including under § 1444(c), to law firm which represented itself); *Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398, 400 (5th Cir. 1989) ("Just as the corporation should be entitled to compensation for the time which in-house counsel could have spent on other corporate matters, so is a law firm entitled to compensation for the time which the representing attorney could have spent on other client matters.").

DATED: April 18, 2023

RESPECTFULLY SUBMITTED,

    /s/ Jared H. Beck
By: Jared H. Beck
**BECK & LEE TRIAL LAWYERS**
JARED H. BECK
Florida Bar No. 20695
ELIZABETH LEE BECK
Florida Bar No. 20697
8306 Mills Drive # 248
Miami, Florida 33183
Telephone:   (305) 789-0072
Facsimile:    (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2023, I electronically filed the foregoing

*PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND AND REQUEST FOR ATTORNEYS' FEES AND COSTS*

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document(s) are being served this day on all counsel of record or pro se parties identified on the electronic Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    /s/ Jared H. Beck
    Jared H. Beck