Joshua C. Webb (Florida Bar No. 051679)
(*pro hac vice* pending*)*
josh.webb@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, Florida 33601
Telephone: (813) 221-3900
Facsimile: (813) 221-2900

Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Attorneys for Defendant
Twitter, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON'T TREAD ON US, LLC, a Florida limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., a Delaware corporation,<br><br>Defendants. | Case No.: 3:23-CV-02461<br><br>Hon. James Donato<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Date: July 13, 2023<br>Time: 10:00 a.m.<br>Ctrm: 11<br><br>[Defendant's Request for Judicial Notice in support of Its Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(6); Declaration of Kenneth M. Trujillo-Jamison; and [Proposed] Order filed concurrently]<br><br>Complaint Filed: May 19, 2023 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND..........................................................2

III. LEGAL STANDARD...........................................................................................................4

IV. ARGUMENT........................................................................................................................4

    A. Twitter's User Agreement Bars DTOU's Claim ......................................................5

        1. The User Agreement Gives Twitter the Express Right to Suspend Mr. and Mrs. Beck's Twitter Accounts for Any or No Reason, Without Liability to Them ..................................................................................5

        2. The User Agreement Prohibits Assignment of Mr. and Mrs. Beck's Twitter Rights to Plaintiff ........................................................................7

    B. Section 230 of the CDA Bars DTOU's Claim........................................................8

V. CONCLUSION...................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
   No. 21-cv-08017-EMC, 2022 WL 1605673 (N.D. Cal. May 20, 2022) ................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 4

*Brittain v. Twitter, Inc.*,
   2019 WL 2423375 (N.D. Cal. June 10, 2019), *dismissing appeal as frivolous*, No. 19-16622,
   2020 WL 4877527 (9th Cir. Mar. 6, 2020) ....................................................................... 9, 10

*Davidowitz v. Delta Dental Plan of Cal., Inc.*,
   946 F.2d 1476 (9th Cir. 1991) ................................................................................................ 8

*Dehen v. Does 1-100*,
   2018 WL 4502336 (S.D. Cal. Sept. 19, 2018) ........................................................................ 9

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ............................................................................................ 8, 9

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ........................................................................................... 8, 10

*Fed. Agency of News LLC v. Facebook, Inc.*,
   432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................................................ 10

*Fields v. Twitter, Inc.*,
   217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) ......................... 10

*Fyk v. Facebook, Inc.*,
   2019 WL 11288576 (N.D. Cal. June 18, 2019) ................................................................ 9, 11

*Kimzey v. Yelp!*,
   836 F.3d 1263 (9th Cir. 2016) ............................................................................................ 4, 9

*King v. Facebook, Inc.*,
   572 F. Supp. 3d 776 (N.D. Cal. 2021) .................................................................................. 11

*Lewis v. Google LLC*,
   461 F. Supp. 3d 938 (N.D. Cal. 2020), *aff'd,* 851 F. App'x 723 (9th Cir. 2021) ..................... 9

*Long Beach Meml Med. Ctr. v. Cal. Mart Emp. Benefit Plan*,
   172 F.3d 57 (9th Cir. 1999) .................................................................................................... 8

*Mangini v. Wolfschmidt, Ltd*.
   165 Cal. App. 2d 192 (1958) .................................................................................................. 6

*Mezey v. Twitter, Inc.*,
    2018 WL 5306769 (S.D. Fla. July 19, 2018) .............................................................................. 10

*Morton v. Twitter, Inc.*,
    2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) .............................................................................. 9

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) ........................................................................................................ 5

*Neitzke v. Williams*,
    490 U.S. 319 (1989) .................................................................................................................. 4

*Nemet Chevrolet, Ltd. v. Consumeraffirs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) .................................................................................................... 9

*Pac. Shores Hosp. v. Backus Hosp. Med. Benefit Plan*,
    No. CV047935ABCPLAX, 2005 WL 8154685 (C.D. Cal. May 18, 2005) ............................. 8

*Riggs v. MySpace, Inc.*,
    444 F. App'x 986 (9th Cir. 2011) ............................................................................................ 11

*Seismic Reservoir 202, Inc. v. Paulsson*,
    785 F.3d 330 (9th Cir. 2015) .................................................................................................... 4

*Short v. Singer Asset Fin. Co. LLC*,
    107 F. App'x 738 (9th Cir. 2004) .............................................................................................. 7

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 201, *aff'd*, 697 F. App'x 526 (9th Cir. 2017) ....................... 11

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................................................... 4

*Tomlinson v. Qualcomm, Inc.*,
    97 Cal. App. 4th 934 (2002) ...................................................................................................... 7

*Trump v. Twitter Inc.*,
    602 F. Supp. 3d 1213 (N.D. Cal. 2022), *motion for relief from judgment denied*, 3:21-CV-
    08378-JD, 2023 WL 1997921 (N.D. Cal. Feb. 14, 2023) ..................................................... 5, 6

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) .................................................................................................. 4

*Yuksel v. Twitter, Inc.*,
    No. 22-cv-05415-TSH, 2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ................................ 5, 9

**Statutes**

47 U.S.C. § 230 .................................................................................................... 4, 8, 9, 10, 11

47 U.S.C. § 230(c)(1) ................................................................................................ 8, 9, 10, 11

47 U.S.C. § 230(f)(2) ................................................................................................................ 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 1, 4, 8

**Treatises**

Restatement (Second) of Contracts § 322 ....................................................................................... 8

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that, on July 13, 2023, or as soon thereafter as the matter may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, this Motion to Dismiss Plaintiff's Complaint Under Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") will be heard. As explained in the Memorandum of Points and Authorities, Twitter moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. This Motion to Dismiss is based on this Notice of Motion and the Memorandum of Points and Authorities provided below; as well as Defendant's Request for Judicial Notice in Support of Its Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(6) ("RJN") and the Declaration of Kenneth M. Trujillo-Jamison in support of the RJN, filed concurrently.

**STATEMENT OF REQUESTED RELIEF**

Pursuant to Rule of Civil Procedure 12(b)(6), Twitter requests that this Court dismiss Plaintiff's Complaint with prejudice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Twitter moves to dismiss this action with prejudice because Plaintiff failed to state a claim upon which relief may be granted.

Plaintiff Don't Tread On Us LLC's ("DTOU") breach of contract claim arises from Twitter's alleged suspension in January 2019 of two accounts associated with Jared H. Beck ("Mr. Beck") and Elizabeth Lee Beck ("Mrs. Beck") on Twitter's social networking service. (Dkt. 1-1 at *12 ¶ 11.) DTOU brings this action purporting to be the "assignee of all rights" held by Mr. and Mrs. Beck pursuant to their "contractual relationships with Twitter." (Dkt. 1-1 at *14 ¶ 18.)

While DTOU's Complaint recites pages of misguided beliefs as to why the accounts were suspended and should be reinstated, allegedly resulting in Twitter breaching a contract, it ignores the terms of the only operative contract at issue—Twitter's User Agreement. *See* RJN Ex. A

("User Agreement").[1] The User Agreement expressly provides that Twitter can suspend user accounts for "any or no reason," without any liability to users, and that no rights under that agreement could be assigned to DTOU. (*Id.* at 6.) The Communications Decency Act ("CDA") bars Plaintiff's breach of contract claim as well.

Accordingly, this action should be dismissed with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Twitter operates a social media communication service that allows users to communicate through posts—called "Tweets"—on the platform. Mr. and Mrs. Beck used Twitter accounts until January 2019, when their accounts were allegedly suspended. (Dkt. 1-1 at 12-13 ¶¶ 11, 13.)

To use Twitter's platform, a user must agree to the terms of the User Agreement, which states that for all U.S. residents, "the Twitter User Agreement comprises these Terms of Service [hyperlinked], our Privacy Policy [hyperlinked], the Twitter Rules [hyperlinked] and all incorporated policies." *See* User Agreement at 1). The "Terms of Service ("Terms") govern [users'] access to and use of [Twitter's] services." (*Id.* at 2.) By creating their Twitter accounts and continuing to use them, Mr. and Mrs. Beck necessarily consented to the terms of the User Agreement. (*Id.* ("By using the Services you agree to be bound by these Terms."); *id.* at 8 ("By continuing to access or use the Services . . . you agree to be bound by the revised Terms . . . . These Terms are an agreement between you and Twitter . . . ."); Dkt. 1-1 at 14 ¶ 21 ("Both Jared Beck and Elizabeth Lee Beck have valid and enforceable contracts with Twitter").)

While the User Agreement states that Twitter gives its users "a personal, worldwide, royalty-free, non-assignable and non-exclusive license to use the software," it also states that:

> [t]his license has the sole purpose of enabling you to use and enjoy the benefit of the Services as provided by Twitter, in the manner as permitted by these Terms . . . [and] Nothing in these Terms gives you a right to use the Twitter name or any of the Twitter trademarks, logos, domain names, and other distinctive brand features. *All right, title, and interest in and to the Services (excluding Content provided by users) are and will remain the exclusive property of Twitter and its licensors.*

---

[1] As explained in Defendant's RJN, filed concurrently, this Court may take judicial notice of, or in the alternative incorporate by reference, the User Agreement.

*See* User Agreement at 6 (emphasis added).

In addition, the User Agreement states that Twitter:

> *may suspend or terminate your account or cease providing you with all or part of the Services at any time for any or no reason*, including, but not limited to, if we reasonably believe: (i) you have violated these Terms or the Twitter Rules or Periscope Community Guidelines . . .

(*Id.* (emphasis added).)

Twitter may also:

> "remove or refuse to distribute any Content on the Services, *suspend or terminate users, and reclaim usernames without liability to you*."

(*Id*. at 4 (emphasis added).)

Finally, Twitter retained the ability to change its terms in the User Agreement:

> We may revise these Terms from time to time. The changes will not be retroactive, and the *most current version of the Terms, which will always be at twitter.com/tos will govern our relationship with you*. We will try to notify you of material revisions, for example via a service notification or an email to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."

(*Id*. at 8 (emphasis added).)

In January 2023,[2] Mr. and Mrs. Beck purported to assign all rights they had pursuant to the User Agreement to DTOU. (Dkt. 1-1 at 14 ¶ 18.) That same month, DTOU sued Twitter, asserting a lone breach of contract claim. (*Id.* at 20 ¶¶ 20-26.)

The Complaint alleges that Twitter breached its contract with Mr. and Mrs. Beck because it has not restored the subject suspended accounts. (*Id.* at 13-14 ¶ 3; 20 ¶ 24.) Specifically, DTOU alleges that a "Tweet" by Elon Musk, Twitter's owner and CEO, somehow warranted the restoration of the subject accounts. (*Id.* at 1-2 ¶ 1; 13 ¶ 14; 20 ¶ 23.) Twitter's failure to "unsuspend" the subject accounts, DTOU alleges, therefore amounts to a breach of contract. (*Id.* at 20 ¶ 24.)

On May 19, 2023, this action was transferred to the Northern District of California when

---

[2] DTOU was formed as of January 17, 2023, three days before this lawsuit was filed. (Dkt. 1-3.)

the court in the Southern District of Florida granted Twitter's motion to transfer (Dkt. 5) based on the mandatory forum-selection clause in the User Agreement. (Dkt. 20.) In granting the transfer motion, the Court found that Plaintiff did not dispute that Mr. and Mrs. Beck agreed to the User Agreement. (Dkt. 20 at 5.)

## III. LEGAL STANDARD

Under Rule 12(b)(6), courts may dismiss complaints that "fail[] to state a claim upon which relief can be granted," including "on the basis of a dispositive issue of law," like Section 230 immunity. *Seismic Reservoir 202, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)); *Kimzey v. Yelp!*, 836 F.3d 1263, 1266 (9th Cir. 2016) (affirming dismissal based on Section 230 immunity).

A complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the plaintiff to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court accepts the complaint's well-pleaded factual allegations as true and makes factual inferences in favor of the plaintiff, but the Court is not required to accept legal conclusions couched as factual allegations. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021). Further, the Court is not required to accept conclusory allegations that are contradicted by the operative contract. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 990 (9th Cir. 2001).

## IV. ARGUMENT

DTOU fails to state a claim for breach of contract, because the operative contract—the User Agreement—expressly grants Twitter the right to suspend Mr. and Mrs. Beck's accounts for any or no reason, and prohibits their purported assignment of rights to DTOU. (User Agreement at 6.) Accordingly, Twitter's suspension of their accounts cannot constitute a breach of contract. In addition, Section 230 of the CDA bars DTOU's effort to impose liability on Twitter for performing traditional editorial function with the suspension of the subject Twitter accounts.

### A. Twitter's User Agreement Bars DTOU's Claim

*1. The User Agreement Gives Twitter the Express Right to Suspend Mr. and Mrs. Beck's Twitter Accounts for Any or No Reason, Without Liability to Them*

DTOU's claim targets Twitter's alleged failure to reinstate accounts associated with Mr. and Mrs. Beck. But access to Twitter's platform was limited by agreement, and subject to Twitter's control. In the first instance, the User Agreement states that "All right, title, and interest in and to the Services (excluding Content provided by users) are and will remain the exclusive property of Twitter and its licensors." (*Id*. at 6.) Consequently, Mr. and Mrs. Beck had no right to own or operate their accounts.

Moreover, the User Agreement expressly permitted Twitter to suspend Mr. and Mrs. Beck's accounts in at least three different places.

First, the User Agreement states Twitter "may suspend or terminate your account or cease providing you with all or part of the Services at any time *for any or no reason*." (*Id*. at 6 (emphasis added).) Second, it states Twitter may "remove or refuse to distribute any Content" and "*suspend or terminate users . . . without liability* to [user]." (*Id*. (emphasis added).) Third, it states that Twitter gives its users a non-exclusive license to use the software and "[n]othing in the Terms gives [users] a right to use the Twitter name or any of the Twitter trademarks, logos, domain names, and other distinctive brand features." *Id*. at 6. These provisions undeniably gave Twitter the right to suspend the subject accounts at its discretion or otherwise restrict use of Twitter's services, and without liability. *See, e.g.*, *Trump v. Twitter Inc.*, 602 F. Supp. 3d 1213, 1227 (N.D. Cal. 2022) (Donato, J.), *motion for relief from judgment denied,* 3:21-CV-08378-JD, 2023 WL 1997921 (N.D. Cal. Feb. 14, 2023) (finding the User Agreement "gave Twitter contractual permission to act as it saw fit with respect to any account or content for any or no reason"); *Yuksel v. Twitter, Inc.*, No. 22-cv-05415-TSH, 2022 WL 16748612, at *5 (N.D. Cal. Nov. 7, 2022) ("Twitter had the contractual right under the Terms to suspend [plaintiff's] account, and his breach of contract claim therefore fails."); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021) (holding that breach of contract claim "necessarily fails . . . because Twitter's terms of service expressly state that they reserve the right to 'suspend or terminate [users]'

accounts . . . . for any or no reason' without liability").

Likewise, the User Agreement contains no provision requiring Twitter to reinstate any account. Thus, DTOU has no contractual basis to complain about Twitter's suspension of the subject accounts, let alone Twitter's refusal to "unsuspend" them. (Dkt. 1-1 at 14 ¶ 24.); *Trump*, 602 F. Supp. 3d at 1227. On the contrary, the User Agreement, which Mr. and Mrs. Beck agreed to be bound by, specifically allows Twitter to indefinitely suspend accounts. *See* User Agreement at 6 ("[Twitter] may suspend or terminate [the user's] account or cease providing [the user] with all or part of the Services at any time for any or no reason"). On this basis alone, DTOU's claim for breach of contract fails.

DTOU attempts to avoid dismissal by pointing to a "Tweet" by Twitter's CEO, Elon Musk, as somehow modifying the terms of the User Agreement. Specifically, DTOU alleges that Mr. Musk's "Tweet" concerning "suspended accounts" entitles Mr. and Mrs. Beck to have the subject accounts reinstated, and Twitter's failure to do so is a breach of contract. (Dkt. 1-1 at 6 ¶ 1; 20 ¶¶ 23-24.) However, this claim is flawed, and again barred by the explicit terms of the User Agreement.

As users of the Twitter service, Mr. and Mrs. Beck were bound by the written terms of the User Agreement. (*See* User Agreement at 2 ("These Terms of Service ("Terms") govern your access to and use of our services . . ."; *id.* at 8 ("the most current version of the Terms, which will always be at twitter.com/tos, will govern our relationship with you.").) Under California law, "when the parties have voluntarily expressed their agreement in written form, the writing represents a complete integration of their understanding" unless it is missing some essential term – which the User Agreement is not. *Mangini v. Wolfschmidt, Ltd*. 165 Cal. App. 2d 192, 198 (1958).[3]

As DTOU also alleges, "[t]he contracts with Twitter allow Twitter the right to revise or modify their terms." (Dkt. 1-1 at 14 ¶ 22.) However, DTOU's allegation that a tweet by Mr.

---

[3] The Terms of Service under the User Agreement provide that "The laws of the State of California, excluding its choice of law provisions, will govern these Terms." *See* User Agreement at 8.

Musk modified the terms of the User Agreement is contrary to the terms of the User Agreement, which explicitly state that Twitter "may revise these Terms from time to time" and "the most current version of the Terms, which will always be at twitter.com/tos will govern our relationship with you." (*Id.* at 2, 8.) The User Agreement also states "[w]e will try to notify you of material revisions, for example via a service notification or an email to the email associated with your account." (*Id*). By continuing to use Twitter's platform, Mr. and Mrs. Beck agreed to these terms. *Id.* ("By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."). And no terms within the User Agreement allow for modification by "Tweet" or anything other than the revision of terms in the User Agreement posted on Twitter's website. Where, as here, parties have contracted for an exclusive means of modifying an agreement, no alleged modification will be given effect where it does not comply with the express contract provision. *See Tomlinson v. Qualcomm, Inc.*, 97 Cal. App. 4th 934, 946 (2002) (holding that agreement had not been modified and explaining that "the parties agreed . . . to the exclusive method for amending [the contract] and therefore no other purported amendments (whether in written or oral form) are effective")

Mr. Musk's tweet did not modify the User Agreement. There simply is no contractually binding term that would support DTOU's claim for breach of contract for Twitter's alleged failure to "unsuspend" the subject accounts, and the claim should be dismissed.

    *2.*    *The User Agreement Prohibits Assignment of Mr. and Mrs. Beck's Twitter Rights to Plaintiff*

The User Agreement explicitly states that "Twitter gives you a personal, worldwide, royalty-free, *non-assignable* and non-exclusive license to use the software provided to you as part of the Services." (*Id.* at 6 (emphasis added).) This provision prevents the assignment of any rights belonging to Mr. and Mrs. Beck relating to the use of Twitter's software to DTOU. *See, e.g., Short v. Singer Asset Fin. Co. LLC*, 107 F. App'x 738, 739 (9th Cir. 2004) ("[T]he [agreement's] anti-assignment clause deprived [plaintiff] of not only the right to make the assignment [], but also the power to do so. The parties' intention in this regard is clearly manifested by the plain language of the [agreement's] anti-assignment clause . . . Because we

find that [plaintiff] lack the power to assign her payments, her attempted assignment is null and void."); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions.") (citing Restatement (Second) of Contracts § 322.

Consequently, because the breach of contract claim in this action relates to a non-assignable license to use Twitter's software, DTOU's effort to sue for breach of contract as an assignee fails. DTOU's claim should be dismissed because DTOU cannot demonstrate a valid assignment.[4]

**B.     Section 230 of the Communications Decency Act Bars DTOU's Claim**

DTOU's claim should also be dismissed with prejudice because it seeks to hold Twitter, an interactive computer service provider, liable for Twitter's decisions concerning the removal of third-party content posted on Twitter's platform through account suspension. Under well-established precedent, Section 230(c)(1) of the CDA bars all such claims. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157, 1170–71 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.").

District courts may (and routinely do) grant Rule 12(b)(6) motions on Section 230 immunity grounds and need not wait for that defense to be raised later. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096–97 (9th Cir. 2019). "[C]ourts aim to resolve the question of § 230 immunity at the earliest possible stage of the case so that defendants entitled to § 230 immunity are saved from having to fight costly and protracted legal battles." *Morton v. Twitter, Inc.*, 2021 WL

---

[4] The prohibition on assignment also means that DTOU should not have standing to pursue any claim, providing alternative grounds for dismissal of its claim. *See, e.g.*, *Pac. Shores Hosp. v. Backus Hosp. Med. Benefit Plan*, No. CV047935ABCPLAX, 2005 WL 8154685, at *3 (C.D. Cal. May 18, 2005) (granting motion to dismiss for lack of subject matter jurisdiction because hospital lacked standing to pursue an action for benefits because the subscriber agreement governing the patient's health plan expressly prohibited assignments); *Long Beach Meml Med. Ctr. v. Cal. Mart Emp. Benefit Plan*, 172 F.3d 57 (9th Cir. 1999) (finding that the district court did not err by concluding the medical center lacked standing because the non-assignment clause was valid under ERISA, but vacating on other grounds).

1181753, at *3 (C.D. Cal. Feb. 19, 2021) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffirs.com, Inc.*, 591 F.3d 250, 254–55 (4th Cir. 2009)) (internal quotation marks omitted). Courts thus routinely dismiss claims with prejudice under Section 230. *See, e.g.*, *Fyk v. Facebook, Inc.*, 2019 WL 11288576, at *3 (N.D. Cal. June 18, 2019); *Morton*, 2021 WL 1181753, at *6; *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 963 (N.D. Cal. 2020), *aff'd,* 851 F. App'x 723 (9th Cir. 2021).

Section 230(c)(1) of the CDA "protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat. . . as a publisher or speaker (3) of information provided by another information content provider." *Dyroff*, 934 F.3d at 1097 (citation omitted); *see* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."). All three prongs are met here, and DTOU's breach of contract claim thus falls squarely within this definition.

On Section 230(c)(1)'s first prong, Twitter is a provider of an interactive computer service. As the Ninth Circuit has held, "[t]he prototypical service qualifying for [CDA] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016). This aptly describes Twitter, a platform where account holders post content and engage with the content of other account holders. Courts have thus repeatedly found that Twitter is an "interactive computer service provider." *See, e.g., Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019), *dismissing appeal as frivolous*, No. 19-16622, 2020 WL 4877527, at *1 (9th Cir. Mar. 6, 2020) ("Twitter qualifies as an interactive computer service"); *Yuksel*, 2022 WL 16748612, at *3 ("Twitter is a 'provider . . . of an interactive computer service' under [Section 230]") (quoting 47 U.S.C. § 230(f)(2)); *see also Morton*, 2021 WL 1181753, at *3 ("Twitter provides the prototypical service entitling it to protections of [Section 230]" and "[e]very decision the Court has seen to consider the issue has treated Twitter as an interactive computer service provider, even at the motion to dismiss stage.") (internal quotation marks and citation omitted); *Dehen v. Does 1-100*, 2018 WL 4502336, at *3 (S.D. Cal. Sept. 19, 2018) ("Twitter is an interactive computer service") (citing *Fields v. Twitter, Inc.*, 217 F. Supp. 3d

1116, 1121 (N.D. Cal. 2016) (same conclusion), *aff'd*, 881 F.3d 739 (9th Cir. 2018)).

As for Section 230(c)(1)'s second and third prongs, the Complaint seeks to treat Twitter as a publisher of information provided by another information content provider and the claim is thus barred. A plaintiff treats the defendant as a publisher when it attempts to hold a defendant liable for traditional editorial functions, including reviewing and deciding whether to publish content from third parties. *Roommates*, 521 F.3d at 1170–71. Here, DTOU's breach of contract allegations against Twitter all target Twitter for actions it took as a publisher in determining which individuals (and the content they produce) are allowed to remain on its platform.

The Ninth Circuit and district courts in California have held time and time again that Section 230(c)(1) bars suits like DTOU's, which seek to hold Twitter and other social media platforms liable for "activity that can be boiled down to deciding whether to exclude material that third parties seek to post online." *See Roommates*, 521 F.3d at 1170–71. These courts (and others) have consistently found that plaintiffs who, like DTOU, challenge removal from social media platforms are in fact challenging decisions that Section 230 immunizes from review. *See, e.g.*:

- *Al-Ahmed v. Twitter, Inc.*, No. 21-cv-08017-EMC, 2022 WL 1605673 (N.D. Cal. May 20, 2022), at *16 (finding that Section 230's "second and third prongs" were satisfied because the plaintiff's "claims against Twitter are related to the suspension of his account");

- *Brittain*, 2019 WL 2423375, at *3 ("Twitter argues that Brittain's claims 'ultimately arise from Twitter's alleged decision to suspend' the Brittain Accounts and therefore seek to treat Twitter as a publisher under the CDA. … The Court agrees with Twitter.");

- *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) (dismissing claims as precluded by § 230(c)(1) where "Plaintiffs seek to hold Facebook liable for removing FAN's Facebook account, posts, and content");

- *Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (dismissing with prejudice under section 230 claims challenging Twitter's suspension of Plaintiff's account, because the plaintiff "seeks to hold Twitter liable for its exercise of an publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone

or alter content.") (internal quotations omitted);

- *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) ("[R]emoving content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher.") (citation omitted)), *aff'd*, 697 F. App'x 526 (9th Cir. 2017);

- *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (social network's decision to delete some profiles but not others protected from liability by § 230(c)(1)).

Accordingly, Section 230 of the CDA bars DTOU's claim: Twitter is an interactive computer service; the content challenged by DTOU's claim was created by Mr. and Mrs. Beck; and DTOU seeks to hold Twitter liable for its traditional editorial functions such as deciding whether to publish or withdraw content. DTOU's claim should therefore be dismissed with prejudice. *See Fyk*, 2019 WL 11288576, at *3 ("[G]ranting leave to amend would be futile in this instance as Plaintiff's claims are barred" by § 230(c)(1)); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 792 (N.D. Cal. 2021) (same conclusion).

## V.   CONCLUSION

For the reasons stated above, DTOU's Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated:  June 2, 2023                                HILL, WARD & HENDERSON, P.A.

By:   /s/ Joshua C. Webb
          Joshua C. Webb


WILLENKEN LLP
Kenneth M. Trujillo-Jamison
ktrujillo-jamison@willenken.com

*Attorneys for Defendant
Twitter, Inc.*

**ECF ATTESTATION**

Under Local Rule 5-1(h)(3), I, Kenneth M. Trujillo-Jamison, hereby attest that Joshua C. Webb, the signatory to Defendant's Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(6), has concurred in its filing.

Dated: June 2, 2023         By:   */s/ Kenneth M. Trujillo-Jamison*
                                        Kenneth M. Trujillo-Jamison