1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BECK & LEE TRIAL LAWYERS**
ELIZABETH LEE BECK (CA Bar No. 233742)
elizabeth@beckandlee.com
8306 Mills Drive, #248
Miami, Florida 33183
Tel:   305-234-2060
Fax:   786-664-3334

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DON'T TREAD ON US, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No: 4:23-cv-02461-JD<br><br>Hon. James Donato<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**<br><br>Date:      July 13, 2023<br>Time:     10:00 a.m.<br>Ctrm:     11 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................................ 2

III.  LEGAL STANDARD............................................................................................ 4

IV.   ARGUMENT ..................................................................................................... 5

   A.    The Court Should Stay The Action In Deference To The Eleventh Circuit Mandamus
Proceeding .......................................................................................................... 6

   B.    Before Deciding Twitter's Motion To Dismiss, The Court Must Examine The Basis For
Its Own Subject-Matter Jurisdiction And Rule On Plaintiff's Remand Motion ........................ 8

   C.    Even If The Court Had Jurisdiction To Reach The Merits, Twitter's Motion To Dismiss
Should Be Denied.................................................................................................. 8

     1.    Plaintiff Has Pled A Valid Claim For Breach Of Contract Based On Party Conduct
That Modified The Written Agreement ........................................................................ 8

     2.    Plaintiff Is A Valid Assignee Of The Becks' Breach-Of-Contract Claims Against
Twitter As A Matter Of Law ................................................................................... 11

     3.    Section 230 Of The CDA Does Not Bar Contract Claim Like Plaintiff's ................ 11

V.    CONCLUSION................................................................................................. 12

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arnaud v. Little Caesar Enters., Inc.*, Case No. ED CV 18-0316-DOC (KKx), 2018 WL 4772274 (C.D. Cal. Oct. 1, 2018) ................................................................................................................ 8

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) ................................................... 2, 6, 11

*Berenson v. Twitter, Inc.*, No. C 21-09818 WHA, 2022 WL 1289049 (N.D. Cal. Apr. 29, 2022) ............................................................................................................................... passim

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ................................................................. 7

*Creditors Adjustment Bureau, Inc. v. IBT Media Inc.*, Case No. 19-cv-02305, 2019 WL 3082845 (N.D. Cal. July 15, 2019) ..................................................................................... 2, 6, 11

*Daughtery Co. v. Kimberly-Clark Corp.*, 14 Cal. App. 3d 151, 92 Cal. Rptr. 120 (1971) .............. 9

*DDR Oceanside LLC v. Regal Cinemas, LLC*, Case No. 04-CV-1176 IEG (BLM), 2005 WL 8173077 (S.D. Cal. Sept. 8, 2005) ................................................................................... 9

*Dotson v. Elite Oil Field Servs., Inc.*, 91 F. Supp. 3d 865 (N.D.W. Va. Mar. 4, 2015) ................. 8

*Emps. Reinsurance Co. v. Super. Ct.*, 161 Cal. App. 4th 906 (2008) ...................................... 9

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C 08-4909 SI, 2009 WL 1313193 (N.D. Cal. May 12, 2009) ............................................................................................... 7

*Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp. v. Sarkisian*, No. 16-cv-05079-PJH, 2016 WL 10859439 (N.D. Cal. July 16, 2018) ........................................................... 5

*Gottlieb v. Alphabet Inc.*, Case No. 5:17-cv-06860-EJD, 2018 WL 2010976 (N.D. Cal. Apr. 30, 2018) ....................................................................................................................... 11

*In re Caesars Ent. Operating Co.*, 588 B.R. 233 (9th Cir. 2018) ......................................... 7

*In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................... 4

*In re: Don't Tread on Us, LLC*, Case No. 23-11681 (11th Cir. May 22, 2023) ..................... 1, 4

*Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12 (2021) ................................................... 10

*Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233 (2016) ................................................. 10

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) . 7

*SK Networks Co. Ltd. v. Bentley Forbes Holdings, LLC*, Case No. CV 12-08997 MMM (SHx), 2013 WL 12131715 (C.D. Cal. Nov. 7, 2013) ................................................................... 11

*Trump v. Twitter, Inc.*, No. 3:21-CV-08378-JD, 2023 WL 1997921 (N.D. Cal. Feb. 14, 2023) ... 10

*United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960 (9th Cir. 2004) .................... 8

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ............................................. 4

*Whitaker v. Monroe Staffing Servs., LLC*, 42 F. 4th 200 (4th Cir. 2022) ............................. 7

*Wilding v. DNC Servs. Corp.*, 941 F.3d 1116 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2828 (2020) ....................................................................................................................... 3

*Yuksel v. Twitter, Inc.*, No. 22-cv-05415-TSH, 2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) .... 10

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      INTRODUCTION

3

Prior to deciding Defendant Twitter Inc.'s ("Twitter's) motion to dismiss ("MTD")

4

[D.E. 30], the Court should stay the action in view of Plaintiff Don't Tread on Us, LLC's

5

("Plaintiff's" or "DTOU's") pending mandamus action in the Eleventh Circuit.  *In re: Don't*

6

*Tread on Us, LLC*, Case No. 23-11681 (11th Cir. May 22, 2023).  The reasons supporting such

7

a stay are set forth in DTOU's motion for stay filed June 1, 2023, and pending with the Court

8

[D.E. 29].

9

Alternatively, if the Court chooses not to enter a stay, then prior to ruling on Twitter's

10

motion, it must examine the basis for its own subject-matter jurisdiction.  As set forth in

11

DTOU's motion to remand, originally filed in the Southern District of Florida [D.E. 10], denied

12

as moot in the Southern District of Florida's transfer order [D.E. 20], and renewed by DTOU in

13

this Court [D.E. 36], Twitter, as the removing party, has failed to meet its burden of

14

establishing that the amount in controversy exceeds $75,000.

15

Finally, Twitter's motion fails on the merits because Twitter has not supplied an

16

adequate reason to dismiss the action under Rule 12(b)(6).

17

Originally brought in the Eleventh Judicial Circuit, in and for Miami-Dade County,

18

Florida on January 20, 2023, this action concerns the failure of Twitter to reinstate the accounts

19

of two attorneys who were suspended for engaging in political speech and advocacy

20

surrounding the legitimacy of the 2016 Democratic Party primaries, despite announcing a

21

"general amnesty" on November 24, 2022, and reinstating numerous other accounts pursuant to

22

the policy since then.  The complaint asserts a single claim for breach of contract.  Twitter

23

removed the action to this Court, and then filed a motion to dismiss and a motion to transfer

24

venue.  As discussed in detail below, the motion to dismiss should be denied for the following

25

reasons.

26

First, the argument that Plaintiff's claim is barred by language in the terms of service on

27

Twitter's website is inapposite.  Plaintiff's breach-of-contract claim is pled on the basis of party

28

conduct which modified the written contractual terms, and this very theory of liability was

1

recently upheld at the pleading state in a case brought by a permanently suspended user against Twitter. *Berenson v. Twitter, Inc.*, No. C 21-09818 WHA, 2022 WL 1289049, *2 (N.D. Cal. Apr. 29, 2022) (Alsup, J.) ("Plaintiff plausibly avers that Twitter's conduct here modified its contract with plaintiff and then breached that contract by failing to abide by its own five-strike policy and its specific commitments set forth through its vice president.").

Twitter's remaining arguments for dismissal lack merit as well. While Twitter argues that the terms of service also barred the accountholders from assigning their claim to Plaintiff, this is untrue as a matter of law. *See Creditors Adjustment Bureau, Inc. v. IBT Media Inc.*, Case No. 19-cv-02305, 2019 WL 3082845, *2 (N.D. Cal. July 15, 2019) ("a contractual provision prohibiting the assignment of 'rights' under the contract does not on its own prohibit the right to assign a claim for damages for a breach of contract"). Here, Twitter does not – and cannot – point to any language **specifically** barring assignment of the right to bring suit, dooming its argument.

Lastly, Twitter argues that Section 230 of the Computer Decency Act ("CDA"), *i.e.*, "section 230 immunity," bars the claim. However, courts have roundly rejected the attempt to extend section 230 immunity to breach-of-contract claims. *Berenson*, 2022 WL 1289049, at *2 ("With regard to breach of contract and promissory estoppel, this order reads our court of appeals' *Barnes* decision to allow those claims to go forward despite Section 230, so long as they are properly pleaded under state law." (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)).

For all of these reasons, and as discussed in further detail below, the Court should, in the alternative to staying the action or remanding it to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, deny Twitter's motion to dismiss.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this action on January 20, 2023, by filing its Complaint in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida. The Complaint asserts a single state-law claim for breach of contract against Twitter. Compl. [D.E. 1-1] ¶¶ 20-26. It alleges that Jared Beck and Elizabeth Lee Beck (collectively, "the Becks") are married

2

attorneys who filed suit against the Democratic National Committee ("DNC") and its former chair, congresswoman Debbie Wasserman Schultz, on behalf of Bernie Sanders supporters for rigging the 2016 Democratic primaries in favor of Hillary Clinton.  Id. ¶ 7; *see also Wilding v. DNC Servs. Corp.*, 941 F.3d 1116 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2828 (2020).  The Complaint alleges that the Becks became fierce and outspoken critics of the DNC on social media and in 2019, and Twitter permanently suspended both of their accounts in the wake of tweets critical of Vice President Kamala Harris's presidential campaign.  Compl. ¶¶ 11-13. Plaintiff goes on to allege that Harris's former press secretary was a high-level Twitter executive at the time the Becks' accounts were suspended.  *Id.*  ¶ 12.

In October 2022, billionaire Elon Musk purchased Twitter, promising to address concerns that the social media company responsible for hosting the "digital town square" was increasingly suppressing free speech.  *Id.* ¶ 1.  Internal documents released after Musk's acquisition (the "Twitter Files") exposed intense coordination between Twitter and various government agencies, including the FBI, CIA, and Department of Defense as well as the Democratic Party, to censor discourse on the platform around select public issues including the 2020 presidential election, the Hunter Biden laptop controversy, and COVID-19.  *Id.* ¶ 2.

On November 24, 2022, Twitter announced, through Musk, "a general amnesty to suspended accounts[.]" *Id.* ¶ 1 ("November Amnesty Policy").  To be eligible, a suspended account must "have not broken the law or engaged in egregious spam[.]" *Id.*  The amnesty was scheduled to begin the week of November 28, 2022; Twitter has reinstated numerous accounts pursuant to the policy.  *Id.* ¶¶ 1, 3.

The Becks' accounts meet all the requirements of Twitter's November Amnesty Policy because the Becks never engaged in spam or broke the law.  They have never been accused of either disqualifying activity by Twitter; nonetheless, despite numerous requests made to Twitter's counsel, the Becks' accounts have not been reinstated.  *Id.* ¶¶ 14-15. DTOU is the assignee of all of the Becks' rights pursuant to their respective contracts with Twitter.  *Id.* ¶ 18.

On March 9, 2023, Twitter removed the action to the Southern District of Florida, claiming diversity jurisdiction.   On March 15, 2023, Twitter filed a motion to transfer venue [D.E. 5] and motion to dismiss [D.E. 6].

On March 28, 2023, Plaintiff filed a motion to remand based on lack of subject-matter jurisdiction [D.E. 10].

On May 19, 2023, without a hearing, the Southern District of Florida issued an order transferring the action to this Court and denying Defendant's motion to dismiss and Plaintiff's motion to remand as "moot." [D.E. 20].  The order was implemented, and the case transferred to this Court, on the same day.

On May 22, 2023, Plaintiff filed a petition for writ of mandamus in the United States Court of Appeals for the Eleventh Circuit.  *In re: Don't Tread on Us, LLC*, Case No. 23-11681 (11th Cir. May 22, 2023).  In the mandamus proceeding, Plaintiff seeks an order vacating the Southern District of Florida's transfer order as erroneous for failure to establish that there is federal subject-matter jurisdiction over the action.  The mandamus petition further argues that the transfer order erroneously denied Plaintiff's motion to remand the action to Florida state court as "moot."

On June 1, 2023, Plaintiff moved this Court to stay the action pending the outcome of the mandamus proceeding in the Eleventh Circuit, and lodged a copy of the mandamus petition. [D.E. 29, 29-1].

On June 2, 2023, Twitter filed its second motion to dismiss the Complaint [D.E. 30].

Concurrently with this opposition to the motion to dismiss, Plaintiff is renewing its motion to remand this action to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

## III.     LEGAL STANDARD

"In evaluating a motion to dismiss, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor."  *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1060 (N.D. Cal. 2015) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).

4

## IV.    __ARGUMENT__

Even before turning to the merits of Twitter's motion to dismiss, there are two threshold issues the Court must consider: (1) whether to stay this action pending the outcome of Plaintiff's mandamus action in the Eleventh Circuit; and (2) whether there is federal subject-matter jurisdiction over this matter.

As to the first threshold issue, Plaintiff's motion to stay demonstrated that entering a limited stay pending the outcome of the Eleventh Circuit proceeding was fully supported by the three-part test adopted by this District where a stay is requested pending a mandamus action in an outside jurisdiction, including a challenge to a transfer order.  While Twitter has opposed the motion to stay, relying on a different and irrelevant set of factors, and the motion remains pending, Plaintiff maintains that under the circumstances presented here, "the issuance of a stay would result in the fairest course for the parties, and would also be more efficient for management of the docket."  *Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp. v. Sarkisian*, No. 16-cv-05079-PJH, 2016 WL 10859439, *1 (N.D. Cal. July 16, 2018) (staying proceedings pending the Third Circuit's consideration of mandamus petition challenging transfer order).

As to the second threshold issue, this Court cannot reach the merits of a 12(b)(6) motion in the absence of subject-matter jurisdiction.  Because the Southern District of Florida failed to address DTOU's motion to remand for lack of subject-matter jurisdiction, this Court must do so before deciding Twitter's 12(b)(6) motion.  As demonstrated in DTOU's remand motion, this Court lacks subject-matter jurisdiction because Twitter has failed to satisfy its evidentiary burden to prove that the amount in controversy exceeds $75,000.

But even if this Court could reach the motion to dismiss on the merits, it should be denied because Twitter has failed to supply an adequate reason to dismiss the action under Rule 12(b)(6).  First, the argument that Plaintiff's claim is barred by language in the terms of service on Twitter's website is inapposite.  Plaintiff's breach-of-contract claim is pled on the basis of party conduct which modified the written contractual terms, and this very theory of liability was recently upheld at the pleading state in a case brought by a permanently suspended user against

5

Twitter.  *Berenson v. Twitter, Inc.*, No. C 21-09818 WHA, 2022 WL 1289049, *2 (N.D. Cal. Apr. 29, 2022) (Alsup, J.) ("Plaintiff plausibly avers that Twitter's conduct here modified its contract with plaintiff and then breached that contract by failing to abide by its own five-strike policy and its specific commitments set forth through its vice president.").

Twitter's remaining arguments for dismissal lack merit as well.  While Twitter argues that the terms of service also barred the accountholders from assigning their claim to Plaintiff, this is untrue as a matter of law.  *See Creditors Adjustment Bureau, Inc. v. IBT Media Inc.*, Case No. 19-cv-02305, 2019 WL 3082845, *2 (N.D. Cal. July 15, 2019) ("a contractual provision prohibiting the assignment of 'rights' under the contract does not on its own prohibit the right to assign a claim for damages for a breach of contract").  Here, Twitter does not – and cannot – point to any language specifically barring assignment of the right to bring suit, dooming its argument.

Finally, Twitter argues that Section 230 of the Computer Decency Act ("CDA"), *i.e.*, "section 230 immunity," bars the claim.   However, courts have roundly rejected the attempt to extend section 230 immunity to breach-of-contract claims.  *Berenson*, 2022 WL 1289049, at *2 ("With regard to breach of contract and promissory estoppel, this order reads our court of appeals' *Barnes* decision to allow those claims to go forward despite Section 230, so long as they are properly pleaded under state law." (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)).

For all of these reasons, and as discussed in further detail below, the Court should deny Twitter's motion to dismiss.

## A.   The Court Should Stay The Action In Deference To The Eleventh Circuit Mandamus Proceeding

As demonstrated in DTOU's pending motion to stay, this case should be stayed until the outcome of the Eleventh Circuit mandamus proceeding.  Pursuant to the three-part test adopted by this District in the context of a mandamus action challenging a transfer order in an outside jurisdiction, a stay is plainly appropriate.  That test requires the Court to consider: "(1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity

6

which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Golden State*, 2016 WL 10859439, at *1 (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)); *see also Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C 08-4909 SI, 2009 WL 1313193, *2 (N.D. Cal. May 12, 2009) (finding it prudent to stay all litigation due to "uncertainty caused by the pending petition for writ of mandamus" before the Federal Circuit challenging order on motion to transfer).

Twitter's opposition to a stay [D.E. 33] lacks merit because it relies on a different set of factors deployed when a party seeks mandamus relief from the Ninth Circuit, not, as in this case, when there is a mandamus proceeding in another jurisdiction and the party is challenging the order that transferred the action to this District, which raises significant comity and judicial efficiency concerns. *See Genentech*, 2009 WL 1313193, at *2. Moreover, Twitter wholly ignores the meritorious nature of DTOU's mandamus petition. The U.S. Supreme Court's opinion in *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), upon which the Southern District of Florida relied, holds that transfer motions may be granted without examining the basis for the court's subject-matter jurisdiction in only very rare circumstances not present here. *Id.* at 436. Furthermore, there is a body of federal appellate case law which directs district courts to rule on pending remand motions before transfer motions. *Whitaker v. Monroe Staffing Servs., LLC*, 42 F. 4th 200, 208 & n.4 (4th Cir. 2022); *In re Caesars Ent. Operating Co.*, 588 B.R. 233, 237 (9th Cir. 2018). These decisions establish that the Southern District of Florida erred, both as to legal standard and procedure, in granting Twitter's transfer motion without examining subject-matter jurisdiction, and then denying Plaintiff's remand motion as "moot." Accordingly, the case should be stayed to afford Plaintiff its one avenue of judicial review of the Southern District of Florida's transfer order, and allow the Eleventh Circuit to complete its review of the mandamus petition.

### B. Before Deciding Twitter's Motion To Dismiss, The Court Must Examine The Basis For Its Own Subject-Matter Jurisdiction And Rule On Plaintiff's Remand Motion

In the absence of a stay, this Court has a well-recognized duty to ascertain whether it has subject-matter jurisdiction before it can consider Twitter's motion to dismiss on the merits. *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 965 (9th Cir. 2004) ("Before considering Waddell & Reed's motion to dismiss on the merits, however, the district court had a duty to ascertain whether it possessed subject matter jurisdiction"); *see also Dotson v. Elite Oil Field Servs., Inc.*, 91 F. Supp. 3d 865, 868 n.1 (N.D.W. Va. Mar. 4, 2015) ("It is generally improper for the Court to decide a Rule 12(b)(6) motion before ruling on a pending motion to remand.").

Here, Plaintiff has moved to remand based on Twitter's failure to satisfy its burden of proving, by a preponderance of evidence, that the amount of controversy is sufficient to establish diversity jurisdiction. Hence, the Court cannot reach the merits of Twitter's motion to dismiss unless and until it decides Plaintiff's motion to remand; in the absence of subject-matter jurisdiction, the motion to dismiss must be denied as moot. *See Arnaud v. Little Caesar Enters., Inc.*, Case No. ED CV 18-0316-DOC (KKx), 2018 WL 4772274, *6 (C.D. Cal. Oct. 1, 2018) (denying motion to dismiss as moot upon granting motion to remand).

### C. Even If The Court Had Jurisdiction To Reach The Merits, Twitter's Motion To Dismiss Should Be Denied

Notwithstanding Plaintiff's motion for stay, the absence of subject-matter jurisdiction and Plaintiff's motion to remand, Twitter's motion to dismiss lacks merit and should be denied. As demonstrated below, Twitter has failed to demonstrate a single persuasive ground on which Plaintiff's claim could be dismissed.

#### 1. *Plaintiff Has Pled A Valid Claim For Breach Of Contract Based On Party Conduct That Modified The Written Agreement*

Initially, Twitter argues that the terms of service on its website protect the company from suit, because they permit Twitter to suspend accounts "for any or no reason" and "without liability," and there is no term which requires Twitter to reinstate any account. MTD at 5-6.

8

The problem for Twitter is that Plaintiff's claim is based on the parties' conduct, not the terms of service, and courts have expressly rejected this argument in analogous circumstances.

Under California law, "An agreement to modify a written contract will be implied if the conduct of the parties is inconsistent with the written contract so as to warrant the conclusion that the parties intended to modify it." *Daughtery Co. v. Kimberly-Clark Corp.*, 14 Cal. App. 3d 151, 158, 92 Cal. Rptr. 120 (1971) (citation omitted) (reversing dismissal of breach-of-contract claim based on party conduct); *see also DDR Oceanside LLC v. Regal Cinemas, LLC*, Case No. 04-CV-1176 IEG (BLM), 2005 WL 8173077, *3 (S.D. Cal. Sept. 8, 2005).  In *Berenson v. Twitter, Inc.*, Judge Alsup applied this principle to reject Twitter's attempt to dismiss a breach-of-contract claim brought by a permanently suspended user.  2022 WL 1289049, at *2.  The court held that Twitter's post-user agreement announcement of a "five-strike policy" and the email correspondence of a company vice president could "amount to a modification of the contract," including the terms of service, because "the course of performance 'may supplement or qualify the terms of the agreement, or show a waiver or modification of any term inconsistent with the course of performance.'"  *Id.* (quoting *Emps. Reinsurance Co. v. Super. Ct.*, 161 Cal. App. 4th 906, 920-21 (2008)).

Here, as alleged, Twitter modified its user agreements with the Becks when it announced and implemented a new policy of "general amnesty" – the November Amnesty Policy – applicable to their accounts under the policy's plain terms, and proceeded to reinstate numerous other facially eligible accounts pursuant to the policy.  Despite Twitter's insistence that it retains the ability to suspend accounts and keep them muzzled "for any and no reason," its adoption of a "general amnesty" policy applicable to Plaintiff's accounts and failure to abide by the black-letter terms of that policy plainly overrides the language of the terms of service and thoroughly supports Plaintiff's breach-of-contract claim based on party conduct modifying the operative agreement.  *See Berenson*, 2022 WL 1289049, at *2 ("Plaintiff plausibly avers that Twitter's conduct here modified its contract with plaintiff and then breached that contract

9

1   by failing to abide by its own five-strike policy and its specific commitments set forth through

2   its vice president.").[1]

3       Twitter's argument that tweets from its owner and CEO, Elon Musk, could not have

4   modified the Becks' agreements fares no better. *Berenson* held that a new content moderation

5   policy regarding COVID-19 set forth on Twitter's blog along with e-mails from a Twitter vice

6   president could modify Twitter's terms of service. 2022 WL 1289049, at \*2. If that is the case,

7   then surely tweets coming directly from Twitter's owner and CEO setting forth a general

8   amnesty policy in definite, unqualified terms along with Twitter's subsequent implementation

9   of the policy could alter the same terms. To put it simply, Twitter has no colorable argument

10  for why the tweets from Musk should be treated any differently than the blog posts and emails

11  that served to modify the user agreement in *Berenson*.

12

13

14

---

15  [1]     Indeed, as Judge Alsup also noted, "Any ambiguities in a contract like Twitter's terms of
16  service are interpreted against the drafter, Twitter." *Berenson*, 2022 WL 1289049, at \*2 (citing
    *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016)). Here, notwithstanding Twitter's
17  wholesale reliance on the terms of service despite Plaintiff's well-pled allegations of modification
    by party conduct, there is no language in the TOS addressing **reinstatement** – which is the crux of
18  this action – as opposed to suspension or termination. The November Amnesty Policy is thus
    totally consistent with the TOS, Twitter's claims of contradiction aside, as well as the fact that
19  California law authorizes modification by party conduct regardless of any inconsistencies with the
    written contract.
20      The three Twitter cases relied on in Twitter's motion are each completely distinguishable
21  because **none** of them involved a claim that Twitter breached its obligation to **reinstate** an account
    pursuant to the November Amnesty Policy or any other policy adopted by the company. *See*
22  *Trump v. Twitter, Inc.*, No. 3:21-CV-08378-JD, 2023 WL 1997921, \*1 (N.D. Cal. Feb. 14, 2023)
    (plaintiffs claimed Twitter "de-platformed" them and filed suit before "Twitter was acquired by
23  Elon Musk, who made a number of widely publicized changes that reversed prior limitations on
    users and content"); *Yuksel v. Twitter, Inc.*, No. 22-cv-05415-TSH, 2022 WL 16748612 (N.D.
24  Cal. Nov. 7, 2022) ("Yuksel seeks to hold Twitter liable for its decision to suspend his account");
    *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021) (user brought suit challenging decision to
25  suspend her account).
26      In stark contrast, this case challenges Twitter's decision not to reinstate accounts despite
    adoption of the November Amnesty Policy and the accounts' clear entitlement to amnesty under
27  that policy. As such, *Berenson*, which deals directly with the implications of a Twitter policy
    implemented sequentially after the operative user agreement, plainly controls this case for
28  purposes of the motion to dismiss.

10

2.      *Plaintiff Is A Valid Assignee Of The Becks' Breach-Of-Contract Claims Against Twitter As A Matter Of Law*

Twitter also argues that Plaintiff cannot, or lacks standing to, state a claim because the Becks were barred from assigning their claims against Twitter under the terms of service.  But this is legally and factually incorrect.  Under California law, an agreement prohibiting an assignment of "rights" will not serve to bar assignment of a claim for breach of the agreement without specific language to that effect.  *Creditors Adjustment Bureau, Inc. v. IBT Media Inc.*, Case No. 19-cv-02305, 2019 WL 3082845, *2 (N.D. Cal. July 15, 2019) (citing *Gottlieb v. Alphabet Inc.*, Case No. 5:17-cv-06860-EJD, 2018 WL 2010976, *4 (N.D. Cal. Apr. 30, 2018); *SK Networks Co. Ltd. v. Bentley Forbes Holdings, LLC*, Case No. CV 12-08997 MMM (SHx), 2013 WL 12131715, *18–19 (C.D. Cal. Nov. 7, 2013).

Here, Twitter can only point to a very limited "anti-assignment clause" in the TOS – "Twitter gives you a personal, worldwide, royalty-free, *non-assignable* and non-exclusive license to use the software provided to you as part of the Services."  MTD at 7 (maintaining emphasis added).  On its face, the prohibition on assignment relates **strictly** to the user's license to use the software provided with Twitter's services, and has nothing whatsoever to do with other rights under the agreement with Twitter.  *See also Creditors*, 2019 WL 3082845, at *1 (anti-assignment provisions are strictly construed).  But even if it were a broad clause prohibiting the assignment of "rights" under the agreement, it would not pass muster under California's rule regarding the assignment of claims.  In short, Twitter has no serious argument that Plaintiff is not a valid assignee entitled to bring this suit.

3.      *Section 230 Of The CDA Does Not Bar Contract Claim Like Plaintiff's*

Finally, Twitter argues it is entitled to immunity from Plaintiff's breach of contract suit under section 230 of the CDA.  But this extension of section 230 immunity is a bridge too far, and the Ninth Circuit has held so.  *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009) (no section 230 immunity where "Barnes does not seek to hold Yahoo liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached." ).  *See also Berenson*, 2022 WL 1289049, *2 (no section 230

11

immunity for Twitter for breach of contract and promissory estoppel claims brought by permanently suspended here).

Here, because Plaintiff bases its suit on Twitter's breach of its agreements with the Becks in failing to implement the terms of the November Amnesty Policy, and does not seek to hold Twitter liable as a publisher or speaker of third-party content, Twitter is not entitled to section 230 immunity under the CDA.

**V.     <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Twitter's motion to dismiss.

DATED: June 16, 2023

Respectfully submitted,

<u>/s Elizabeth Lee Beck</u>

Counsel for Plaintiff Don't Tread on Us, LLC
