Joshua C. Webb (Florida Bar No. 051679)
(*pro hac vice* pending*)*
josh.webb@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, Florida 33601
Telephone: (813) 221-3900
Facsimile: (813) 221-2900

Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Attorneys for Defendant
Twitter, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON'T TREAD ON US, LLC, a Florida limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., a Delaware corporation,<br><br>Defendants. | Case No.: 3:23-CV-02461-JD<br><br>Hon. James Donato<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)**<br><br>Date:     July 13, 2023<br>Time:    10:00 a.m.<br>Ctrm:    11<br><br>Complaint Filed: May 19, 2023 |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

    A.  The Court Should Not Delay Ruling on Twitter's Motion to Dismiss Pending the Eleventh Circuit's Mandamus Proceeding............................................................ 1

    B.  The Court Has Jurisdiction to Consider the Merits of DTOU's Claim. ................ 3

    C.  The Complaint Fails to State a Plausible Claim .................................................... 3

        1.  The Complaint Does Not Plausibly Allege that Twitter Modified the User Agreement…………………………………………….......................... 3

        2.  The User Agreement Prohibits Assignment of Rights.............................. 6

        3.  Section 230 Bars DTOU's Claim .............................................................. 7

III.  CONCLUSION................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ATK Launch Sys., Inc. v. EPA,*
651 F.3d 1194 (10th Cir. 2011) ............................................................................................... 2

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) .................................................. 9

*Berenson v. Twitter, Inc.,*
21-09818 WHA, 2022 WL 1289049 (N.D. Cal. Apr. 29, 2022) ...................................... 3, 7, 9

*Brittain v. Twitter, Inc.,*
19-CV-00114-YGR, 2019 WL 2423375 (N.D. Cal. June 10, 2019) ........................................ 8

*Chevron U.S.A. Inc. v. Env't Prot. Agency,*
45 F.4th 380 (D.C. Cir. 2022) .................................................................................................. 2

*Creditors Adjustment Bureau, Inc. v. IBT Media Inc.,*
19-CV-02305-LB, 2019 WL 3082845 (N.D. Cal. July 15, 2019) ........................................ 6, 7

*Daugherty Co. v. Kimberly-Clark Corp.,*
14 Cal. App. 3d 151 (1971) ...................................................................................................... 4

*DDR Oceanside LLC v. Regal Cinemas, Inc.,*
04-CV-1176 IEG (BLM), 2005 WL 8173077 (S.D. Cal. Sept. 8, 2005) ................................. 5

*Garcia v. World Sav., FSB,*
107 Cal. Rptr. 3d 683 (Cal. App. 2d Dist. 2010) ..................................................................... 5

*Gen. Electric Capital Corp. v. MSI Modular Sys.,*
CV1409873RGKJEMX, 2015 WL 11438597 (C.D. Cal. Aug. 17, 2015) ............................... 5

*In re LimitNone, LLC,*
551 F.3d 572 (7th Cir. 2008) .................................................................................................... 2

*Murphy v. Twitter, Inc.,*
274 Cal. Rptr. 3d 360 (Cal. App. 1st Dist. 2021) ............................................................ 6, 8, 9

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.,*
549 U.S. 422 (2007) ................................................................................................................. 2

*SK Networks Co. Ltd. v. Bentley Forbes Holdings, LLC,*
CV1208997MMMSHX, 2013 WL 12131715 (C.D. Cal. Nov. 7, 2013) ............................. 6, 7

*Yuksel v. Twitter, Inc.,*
22-CV-05415-TSH, 2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ........................................ 8

**Statutes**

47 U.S.C. § 230 ............................................................................................................... 1, 7, 8, 9

## I. INTRODUCTION

In its opposition brief, Plaintiff Don't Tread on Us, LLC ("DTOU") signals that the last thing it wants is for this Court to decide the merits of its lone claim. It first reiterates its request for the Court to stay this action pending its mandamus proceeding in the Court of Appeals for the Eleventh Circuit; and if that fails, DTOU asks this Court to remand this case to state court.

The reason for DTOU's procedural gambit is obvious: Its claim fails as a matter of law. DTOU doubles down on its implausible claim that Twitter breached its contract with DTOU's assignors by refusing to reinstate accounts on Twitter's social media platform. Dkt. 36 ("Opposition"). As explained in Twitter's Motion to Dismiss, Plaintiff's theory conflicts with the only operative contract at issue—Twitter's User Agreement—which expressly provides that Twitter can suspend user accounts for "any or no reason," without liability to users, and that no rights under that agreement may be assigned. Further, Section 230 of the Communications Decency Act bars DTOU's claim, which seeks to hold Twitter, an interactive computer service provider, liable for its decisions about the removal through account suspension of third-party content posted on its platform. The authorities on which DTOU relies to avoid this conclusion are distinguishable and inapplicable to the facts at hand, and DTOU's arguments do not rescue its flawed claim.

Plaintiff's Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. The Court Should Not Delay Ruling on Twitter's Motion to Dismiss Pending the Eleventh Circuit's Mandamus Proceeding.

DTOU first asks this Court to stay this action pending resolution of its mandamus action in the Court of Appeals for the Eleventh Circuit. Opposition at 1, 6-7. As fully addressed in Twitter's Opposition to DTOU's Motion to Stay (Dkt. 33), DTOU's request is the latest in a line of forum-shopping tactics seeking to avoid moving this action toward resolution. DTOU suggests Twitter invoked the wrong standard in opposing DTOU's requested stay, Opposition at 7, but it ignores the fact that Twitter's Opposition to the Motion to Stay points out that "[e]ven if

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

this Court evaluated Plaintiff's request [under its suggested standard], [DTOU's Motion to Stay] fails for the same reasons . . . " Dkt. 33 at 2, n. 1. Finally, DTOU's argument is an improper, unauthorized attempt at a reply in support of its stay motion that is not permitted under the Court's rules. Civil L.R 7-11.

DTOU's argument that the Southern District of Florida erred by deciding Twitter's transfer motion without first deciding Plaintiff's remand motion, Opposition at 7, is incorrect. As DTOU itself notes, the U.S. Supreme Court's opinion in *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), "holds that transfer motions *may* be granted without examining the basis for the court's subject-matter jurisdiction . . . ." *Id.* (emphasis added). Further, as the Southern District of Florida explained in its transfer order, *Sinochem* addressed a motion to dismiss based on forum non conveniens but courts have extended the *Sinochem* holding to transfer motions. *See* Dkt. 20 at 4-5. And DTOU does not respond to the cases on which the Southern District of Florida relied in ruling on the motion to transfer without addressing subject matter jurisdiction. *See id.* at 5 (citing *Chevron U.S.A. Inc. v. Env't Prot. Agency*, 45 F.4th 380, 385 (D.C. Cir. 2022) ("The close association between forum non conveniens and venue cements the conclusion that venue, like forum non conveniens, is a threshold, non-merits issue that a court can address without first establishing its jurisdiction."); *see also ATK Launch Sys., Inc. v. EPA,* 651 F.3d 1194, 1200 (10th Cir. 2011); *In re LimitNone, LLC*, 551 F.3d 572, 576–77 (7th Cir. 2008)).

Contrary to DTOU's contention, the Southern District of Florida issued a well-reasoned, eight-page order addressing both the enforceability of forum selection clauses and a district court's ability to rule on a transfer motion before deciding a motion to remand. For these reasons, as well as those more thoroughly addressed in Twitter's opposition to DTOU's Motion to Stay (Dkt. 33), a stay here is not warranted, and this Court should rule on Twitter's Motion to Dismiss.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

**B.     The Court Has Jurisdiction to Consider the Merits of DTOU's Claim.**

DTOU next argues that this Court lacks subject matter jurisdiction and is precluded from deciding Twitter's Motion to Dismiss on the merits. Opposition at 8. For the reasons fully addressed in Twitter's Opposition (Dkt. 16) to DTOU's first Motion to Remand (Dkt. 10), and as will be supplemented in opposition to DTOU's second Motion to Remand (Dkt. 35), the amount in controversy in this action is sufficient to establish diversity jurisdiction. As such, the Court should decline DTOU's invitation to deny Twitter's Motion to Dismiss as moot.

**C.     The Complaint Fails to State a Plausible Claim**

*1.     The Complaint Does Not Plausibly Allege that Twitter Modified the User Agreement.*

DTOU does not dispute that the User Agreement governing the Twitter accounts at issue gives Twitter the contractual right to "suspend accounts 'for any or no reason' and without liability,' and [that] there is no term which requires Twitter to reinstate any account." Opposition at 8. DTOU nonetheless attempts to avoid dismissal by arguing that its breach of contract claim is solely "based on the parties' conduct, not the terms of service." Opposition at 9. In each of the cases DTOU cites in support of this argument, however, the conduct which allegedly modified the contracts at issue consisted of specific and direct assurances to the plaintiff. Those cases do not apply here, where Plaintiff alleges only that Twitter's CEO Elon Musk "offered 'a general amnesty to suspended accounts.'" Dkt. 1-1 at 7 ¶ 1. As addressed below, the "amnesty" Tweet at issue was not directed at a particular account and did not constitute a written modification of the User Agreement.

For example, in *Berenson v. Twitter, Inc.*, cited by DTOU, Twitter's Vice President of Global Communications specifically "contacted plaintiff to open a direct line of communication with the company" about the plaintiff's Tweets after Twitter's announcement of a labeling policy to moderate misinformation concerning COVID-19. 21-09818 WHA, 2022 WL 1289049, at *1 (N.D. Cal. Apr. 29, 2022). With that direct line of communication, the "plaintiff reached out and *received assurances* from Vice President Borrman about how his Tweets would be impacted by the policy." *Id*. (emphasis added). Twitter later allegedly "established a specific, detailed five-

strike policy regarding COVID-19 misinformation and its vice president gave specific and *direct* assurances to plaintiff regarding his posts pursuant to that policy." *Id.* at *2. The Plaintiff also alleged that after Twitter announced the five-strike policy "Plaintiff again reached out to Vice President Borrman, who replied, 'I will say that your name has never come up in the discussions around these policies,' and that '[i]f it does I will try to ensure you're given a heads up before an action is taken, but I am not always made aware of them before they're executed.'" *Id*. After the plaintiff subsequently received five strikes under the policy, his Twitter account was permanently suspended. *Id*.

      The *Berenson* court declined to dismiss the plaintiff's breach of contract and promissory estoppel claim, because the plaintiff "plausibly aver[red] that Twitter's conduct [] modified its contract with plaintiff and then breached that contract by failing to abide by its own five-strike policy *and its specific commitments set forth through its vice president*." *Id*. at 2-3 (emphasis added) (finding that Twitter's "established [] policy that set out standards for account suspension," collectively with "specific assurances to plaintiff," qualified as a clear and unambiguous promise). Importantly, the court distinguished other decisions where the pleading did not allege that Twitter made a "*specific* representation *directly to*" the plaintiff "that they would not remove content . . . or deny access . . ." *Id*. at 3 (emphasis added) (holding that plaintiff's breach of contract and promissory estoppel claims "survive for now," while dismissing plaintiff's other claims as futile). Here, Plaintiff alleges only that Elon Musk offered 'general amnesty to suspended accounts, provided that they have not broken the law or engaged in egregious spam'" and that he posted a Tweet to his followers stating "The people have spoken. Amnesty begins next week. Vox Populi, Vox Dei." Dkt. 1-1 at 7 ¶ 1. These allegations cannot be construed to plausibly allege that Twitter made a "specific commitment" to DTOU sufficient to withstand Twitter's Motion to Dismiss.

      Next, DTOU cites to *Daugherty Co. v. Kimberly-Clark Corp.*, 14 Cal. App. 3d 151 (1971), stating that the court "revers[ed] dismissal of breach-of-contract claim based on party conduct." Opposition at 9. DTOU misconstrues the case. In *Daugherty*, there was a dispute of

material fact as to whether there was an implied *abandonment* of the contract by the parties because there had been a "tremendous number of changes" with the contract and "[t]here was evidence that the job was completely redesigned after the contract was entered into." *Id*. at 155-56. The court reversed summary judgment in favor of defendants, finding that abandonment was a factual issue unsuitable for the court to determine. *Id*. at 156-58. DTOU's complaint, by contrast, does not allege abandonment, and the sheer number of changes between the parties at issue in *Daugherty* is not analogous at all. Dkt. 1-1.

DTOU also cites *DDR Oceanside LLC v. Regal Cinemas, Inc.*, 04-CV-1176 IEG (BLM), 2005 WL 8173077, at *3 (S.D. Cal. Sept. 8, 2005) for the proposition that an agreement to modify a contract will be implied if the parties conduct is inconsistent with the contract. Opposition at 9. However, the court in *DDR Oceanside* noted that although under California law "a contract's term can limit the ability of the parties to orally modify its terms," "where a written agreement requires written modifications, oral amendments are precluded." *Id*. at *5. Here, the User Agreement provides that Twitter may modify its terms of service by making the most current version available online. *See* Dkt. 30 at 8. Thus, any modifications had to be reflected in writing in the online version of Twitter's User Agreement.

Finally, DTOU attempts to distinguish cases on which Twitter relied by pointing to the new "amnesty" policy and contending that the instant case is about reinstatement, not suspension. Opposition at 10 n.1. This misses the mark—any purported contractual obligation to reinstate the accounts necessarily requires that the "amnesty" Tweet in fact modified the terms of service. California law does not support DTOU's position that a single Tweet—not specifically directed to anyone—could modify any contractual obligation. *See Gen. Electric Capital Corp. v. MSI Modular Sys.*, CV1409873RGKJEMX, 2015 WL 11438597, at *2 (C.D. Cal. Aug. 17, 2015) (stating that the California Supreme Court has held that modification will be implied "where the subsequent conduct of parties is inconsistent with and clearly contrary to provisions of the written agreement."); *Garcia v. World Sav., FSB*, 107 Cal. Rptr. 3d 683, 690 (Cal. App. 2d Dist. 2010) ("As a general rule, a gratuitous oral promise to postpone a foreclosure sale or to

allow a borrower to delay monthly mortgage payments is unenforceable").

Significantly, Twitter took no actual action that was inconsistent with the User Agreement, and DTOU's Complaint does not plead otherwise. Dkt. 1-1. Furthermore, unlike *Berenson*, there was no conduct or representations specifically directed to DTOU's assignors. *See Murphy v. Twitter, Inc.*, 274 Cal. Rptr. 3d 360, 374-75 (Cal. App. 1st Dist. 2021) (rejecting the argument that Twitter was liable for any promises or representations made to plaintiff where plaintiff could not "identify any specific representation of fact or promise by Twitter to Murphy . . . beyond general statements in its monitoring policy").

Therefore, the Court should dismiss DTOU's breach of contract claim because DTOU concedes that its claim is not based on a breach of anything in the User Agreement itself,[1] and there was no modification of the User Agreement.

### 2. The User Agreement Prohibits Assignment of Rights

DTOU argues that an agreement prohibiting an assignment of rights will not bar assignment of a claim for breach of the agreement without specific language to that effect. Opposition at 11. However, the cases DTOU cites do not support DTOU's generic position because those cases address assignment for claims of money damages. In *Creditors Adjustment Bureau, Inc. v. IBT Media Inc.*, 19-CV-02305-LB, 2019 WL 3082845, at *2 (N.D. Cal. July 15, 2019), the court stated that "[p]rovisions prohibiting assignment of a contract, or any rights or interests in a contract, are generally valid and enforceable in California," but that "[a] provision in a contract or a rule of law against assignment does not preclude the assignment of money due or to become due under the contract or of money damages for the breach of the contract." *Id*. a *2; see also SK Networks Co. Ltd. v. Bentley Forbes Holdings, LLC*, CV1208997MMMSHX, 2013 WL 12131715, at *19 (C.D. Cal. Nov. 7, 2013) (cited by DTOU, but stating that "[i]n California, a contractual provision prohibiting assignment does not preclude assignment of a *cause of action for money damages*.") (emphasis added).

---

[1] Opposition at 5 ("the argument that Plaintiff's claim is barred by language in the terms of service on Twitter's website is inapposite. Plaintiff's breach-of-contract claim is pled on the basis of party conduct which modified the written contractual terms").

1    Here, DTOU wants to have its cake and eat it too. On the one hand, DTOU contends that
2 Mr. and Mrs. Beck's breach of contract claim was assignable to DTOU because it is a claim for
3 money damages. Opposition at 11 (citing *See Creditors Adjustment Bureau.*, 2019 WL 3082845,
4 at * 2). In its Motion to Remand, however, DTOU attempts to argue that it "has made no
5 monetary demand of any kind," and that its primary purpose is to seek the reinstatement of
6 Twitter accounts used by Mr. and Mrs. Beck. Dkt. 36 at 6. Assignment of any such claim is
7 precluded under the terms of the User Agreement. *Creditors Adjustment Bureau.*, 2019 WL
8 3082845 at *2; *SK Networks Co. Ltd.*, 2013 WL 12131715 at *19. Indeed, DTOU even attempts
9 to argue that the prohibition on assignment relates "strictly to the user's license to use the
10 software provided with Twitter's services." Opposition at 11. Under California law and the User
11 Agreement's prohibition on assignment, DTOU's claim for breach of contract relating to the
12 reinstatement of the Twitter accounts could not be assigned and should therefore be dismissed.

                3.       *Section 230 Bars DTOU's Claim*

14   DTOU also claims that Section 230 of the Communications Decency Act ("CDA") does
15 not bar its breach of contract claim. However, this general proposition and the cases DTOU cites
16 are distinguishable.
17   For example, in *Berenson*, the court held that Twitter was not entitled to Section 230
18 immunity for a breach of contract and promissory estoppel claim brought by a plaintiff, who was
19 permanently suspended from Twitter, where the claims did "not seek to hold Twitter liable as a
20 publisher or speaker of third-party content, but rather as the counter-party to a contract, as a
21 promisor who has breached." *Berenson*, 2022 WL 1289049 at *2 (citations omitted). But as
22 detailed above, in *Berenson*, Twitter's Vice President of Global Communications had direct and
23 specific communications with plaintiff where he provided assurances of Twitter's policy, and the
24 court found that this altered the parties' contract. *Id*. at *3. That does not exist here. Indeed,
25 DTOU cannot hold Twitter liable as the counter-party to a contract because its breach of contract
26 claim based on an alleged modification fails. *See supra* at Section C.1. Instead, the underlying
27 issue here is that Twitter suspended the accounts and has refused to reinstate them. Opposition at
28

1. That is squarely a publisher decision for which Section 230 immunizes Twitter.

Additionally, contrary to DTOU's arguments, California law is clear that Section 230 does bar breach of contract claims seeking the reinstatement of social media accounts. *See e.g.*, *Murphy*, 274 Cal. Rptr. 3d at 377 (holding that each of Murphy's claims relating to her permanent suspension, including her breach of contract claim, was barred by Section 230); *Brittain v. Twitter, Inc.*, 19-CV-00114-YGR, 2019 WL 2423375, at *3 (N.D. Cal. June 10, 2019) (granting Twitter's motion to dismiss all claims relating to the suspension of four accounts, including a breach of contract claim, because Section 230 renders it immune from liability); *Yuksel v. Twitter, Inc.*, 22-CV-05415-TSH, 2022 WL 16748612, at *5 (N.D. Cal. Nov. 7, 2022) (finding that Section 230 did not provide an exception for plaintiff's breach of contract claim and stating that "courts routinely hold that Section 230 immunizes platforms from contract claims, where, as here, they seek to impose liability for protected publishing activity").

For example, in *Murphy*, the court affirmed dismissal of plaintiff's breach of contract and estoppel claims relating to the permanent suspension of a Twitter account on account of Section 230. There, the plaintiff sued Twitter because it permanently suspended her account. 274 Cal. Rptr. 3d at 363. The court found that "[b]ecause each of Murphy's causes of action seek to hold Twitter liable for its editorial decisions to block content she and others created from appearing on its platform, we conclude Murphy's suit is barred by the broad immunity conferred by [Section 230]." *Id*. ("Twitter's refusal to allow certain content on its platform, however, is typical publisher conduct protected by section 230."). Indeed, "in assessing whether a claim treats a provider as a publisher or speaker of user-generated content, however, courts focus not on the name of the cause of action, but whether the plaintiff's claim requires the court to treat the defendant as the publisher or speaker of information created by another." *Id*. at 370. Therefore, "[c]ourts have routinely rejected a wide variety of civil claims like Murphy's that seek to hold interactive computer services liable for removing or *blocking content or suspending or deleting accounts* . . . on the grounds they are barred by the CDA." *Id*. (emphasis added)

1    This Court should do the same here because the claims in *Murphy* are almost identical to
2 DTOU's claim in this action. *Id*. (distinguishing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103
3 (9th Cir. 2009), *as amended* (Sept. 28, 2009)*,* where plaintiff sought to hold Yahoo liable for its
4 alleged promise to remove content). Specifically, like *Murphy*, the essence of DTOU's claim is
5 that Mr. and Mrs. Beck's accounts were and remain permanently suspended. Dkt. 1-1 at 7 ("Mr.
6 and Mrs. Beck's accounts have remained permanently suspended continuously until the
7 present."); *Murphy*, 274 Cal. Rptr. 3d at 367 (seeking injunctive relief requiring the restoration of
8 banned accounts). In addition, like *Murphy*, DTOU also complains that a Tweet modified Mr.
9 and Mrs. Beck's contract with Twitter. *Id.* (plaintiff also brought a promissory estoppel claim
10 alleging that Twitter "violated several clear and unambiguous promises in the user agreement, on
11 its website, and in public statements, including the promise to not monitor or censor content . .
12 ."). The claims in *Murphy* were barred by Section 230, and the same holds true here. *Id*. at 377.
13    Furthermore, *Barnes*, the only other case cited by DTOU, "never suggested . . . that *all*
14 contract or promissory estoppel claims survive CDA immunity." *Murphy*, 274 Cal. Rptr. 3d at
15 372 (citing *Barnes*, 570 F.3d at 1103). Unlike *Barnes,* where the plaintiff sought damages for
16 breach of a specific personal promise, here, as in *Murphy*, "the substance of [DTOU's] complaint
17 accuses Twitter of unfairly applying its general rules regarding what content it will publish" and
18 seeks to have "Twitter restore [the] account." *Id*. at 373-75 ("Murphy does not identify any
19 specific representation of fact or promise by Twitter to Murphy that it would not remove her
20 Tweets or suspend her account beyond general statements in its monitoring policy, the type of
21 allegation the *Barnes* court noted would be insufficient to state a claim."). Therefore, DTOU's
22 argument that Section 230 immunity does not bar its claim in this action is not supported by the
23 law DTOU cites. *Berenson*, 2022 WL 1289049 at *2; *Barnes*, 570 F.3d at 1103. Instead, Section
24 230 does provide immunity for publishing decisions relating to a decision not to restore an
25 account, and DTOU's claim should therefore be dismissed. *Murphy*, 274 Cal. Rptr. 3d at 372.
26
27
28

# III. CONCLUSION

For the reasons stated above and in Twitter's Motion to Dismiss, the Court should enter an order dismissing DTOU's claims with prejudice.

Respectfully submitted,

Dated: June 23, 2023

HILL, WARD & HENDERSON, P.A.

By: */s/ Joshua C. Webb*
      Joshua C. Webb

WILLENKEN LLP
Kenneth M. Trujillo-Jamison
ktrujillo-jamison@willenken.com

*Attorneys for Defendant*
*Twitter, Inc.*

**ECF ATTESTATION**

Under Local Rule 5-1(h)(3), I, Kenneth M. Trujillo-Jamison, hereby attest that Joshua C. Webb, the signatory to Defendant's Reply In Support of Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(6), has concurred in its filing.

Dated:  June 23, 2023                                        By:   */s/ Kenneth M. Trujillo-Jamison*
                                                                           Kenneth M. Trujillo-Jamison