Joshua C. Webb (Florida Bar No. 051679)
(*pro hac vice pending*)
josh.webb@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, Florida 33601
Telephone:  (813) 221-3900
Facsimile:   (813) 221-2900

Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:   (213) 955-9250

Attorneys for Defendant
Twitter, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON'T TREAD ON US, LLC, a Florida limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., a Delaware corporation,<br><br>Defendants. | Case No.: 3:23-CV-02461-JD<br><br>Hon. James Donato<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND BASED ON LACK OF SUBJECT-MATTER JURISDICTION AND REQUEST FOR ATTORNEYS' FEES AND COSTS CAUSED BY IMPROVIDENT REMOVAL (DKT. 35)**<br><br>Complaint Filed: May 19, 2023 |

# TABLE OF CONTENTS

Page

I.   DTOU'S MOTION TO REMAND SHOULD BE DENIED..................................................1

    A.   When Determining Whether Removal Is Warranted, The Court May Evaluate the Parties' Allegations, the Relevant Facts and Corresponding Reasonable Deductions, Inferences and Other Extrapolations, And Use Its Judicial Experience and Common Sense. ...........................................................1

    B.   The Amount in Controversy Exceeds $75,000. .......................................................2

    C.   The Court Should Reject DTOU's Argument that the Court, In Determining the Amount in Controversy, Should Disregard DTOU's Civil Cover Sheet. ...................................................................................................................5

II.   DTOU SHOULD NOT BE AWARDED ATTORNEY'S FEES. ........................................8

III.   CONCLUSION...................................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bell v. Ace Ins. Co. of the Midwest*,
  No. 2:20-CV-309-JLB-NPM, 2020 WL 7396934 (M.D. Fla. Dec. 17, 2020) .......................... 6

*Carter v. Veterans Admin.*,
  780 F.2d 1479 (9th Cir. 1986) ........................................................................................... 9

*Chase v. Holiday CVS, LLC*,
  No. 22-cv-20752, 2022 WL 2135446 (S.D. Fla. May 13, 2022) ................................. 4, 6, 7

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ............................................................................................ 3

*Cuevas v. Ford Motor Co.*,
  No. 22-1520-DMG, 2022 WL 1487178 (C.D. Cal. May 11, 2022) .................................. 9

*Dall v. Albertson's, Inc.*,
  349 F. App'x 158 (9th Cir. 2009) ...................................................................................... 8

*Dart Cherokee Basin Operating Co. v. Owens*,
  135 S. Ct. 547 (2014) ........................................................................................................ 1

*Deutsche Bank Nat. Trust Co. v. Cambron*,
  No. 12-1901-EDL, 2012 WL 1712035 (N.D. Cal. May 12, 2012) ................................ 5, 6

*Dig. Age Mktg. Grp, Inc. v. Sentinel Ins. Co. Ltd.*,
  504 F. Supp. 3d 1345 (S.D. Fla. 2020) .............................................................................. 7

*Dourian v. Stryker Corp.*,
  No. CV 12-1790 DSF (CWx), 2012 WL 12893752 (C.D. Cal. Apr. 25, 2012) ............... 2

*Durshimer v. LM Gen. Ins. Co.*,
  No. 8:20-CV-2014-T-33AEP, 2020 WL 5366721 (M.D. Fla. Sept. 8, 2020) ................... 7

*Flier v. FCA US LLC*,
  No. 21-cv-02553-CRB, 2021 WL 10894075 (N.D. Cal. Oct. 4, 2021) ............................ 1

*Guglielmino v. McKee Foods Corp.*,
  506 F.3d 696 (9th Cir. 2007) ............................................................................................ 2

*Ibarra v. Manheim Invs., Inc.*,
  775 F.3d 1193 (9th Cir. 2015) .......................................................................................... 2

*Jellinek v. Advance Prods. & Sys., Inc.*,
  No. 10cv1226 JW(WMC), 2010 WL 3385998 (S.D. Cal. Aug. 24, 2010) ....................... 2

*Jian-MingZhao v. RelayRides, Inc.*,
  No. 17cv-04099-JCS, 2017 WL 6336082, at *16-17 (N.D. Cal. Dec. 12, 2017) .............. 8

*Martin v. Franklin Cap. Corp.*,
  546 U.S. 132 (2005) .......................................................................................................... 8

*Mayock v. I.N.S.*,
    736 F. Supp. 1561 (N.D. Cal. 1990) .................................................................................... 9

*Mendenhal v. Christensen*,
    No. 16-cv-04232-JSC, 2016 WL 5339710 (N.D. Cal. Sept. 1, 2016) .................................. 4, 6

*PhoneDog v. Kravitz*,
    No. C 11-03747 MEJ, 2011 WL 5415612 (N.D. Cal. Nov. 8, 2011) ......................................... 4

*Physicians Imaging-Lake City, LLC v. Nationwide Gen. Ins. Co.*,
    No. 3:20-CV-1197-J-34JRK, 2020 WL 6273743 (M.D. Fla. Oct. 26, 2020) .......................... 7

*Pretka v. Kolter City Plaza Two, Inc.*,
    608 F.3d 744 (11th Cir. 2010) .............................................................................................. 2

*Roe v. Michelin N. Am., Inc.*,
    613 F.3d 1058 (11th Cir. 2010) ......................................................................................... 2, 7

*Singer v. State Farm Mut. Auto Ins. Co.*,
    116 F.3d 373 (9th Cir. 1997) ................................................................................................ 1

*U.S. S.E.C. v. Chapman*,
    602 F. App'x 407 (9th Cir. 2015) .......................................................................................... 9

*VNA of the Treasure Coast, Inc. v. Am. Alternative Ins. Corp.*,
    No. 10-14283-CIV, 2011 WL 13224907 (S.D. Fla. Feb. 8, 2011) ............................................ 9

*Walcott v. Ferrelgas, Inc.*,
    No. 6:21-cv-154-GAP-DCI, 2021 WL 3518204 (M.D. Fla. Mar. 8, 2021) ............................. 9

**Statutes**

28 U.S.C. § 1446(c)(2)(A)(ii) ....................................................................................................... 1

28 U.S.C. § 1447(c) .............................................................................................................. 8, 9

28 U.S.C. § 1332(a)(1) ............................................................................................................ 10

1   Defendant Twitter, Inc. ("Twitter") respectfully submits this opposition to Plaintiff's
2   Motion to Remand Based on Lack of Subject-Matter Jurisdiction and Request for Attorneys'
3   Fees and Costs Caused by Improvident Removal (Dkt. No. 35) ("Motion to Remand").
4   The Motion to Remand should be denied. Plaintiff Don't Tread on Us ("DTOU")
5   glaringly omits any statement or suggestion that it **is not** seeking relief with value exceeding
6   $75,000. Instead, DTOU focuses entirely on what evidence it suggests this Court can and cannot
7   consider in determining the amount in controversy. But DTOU cannot avoid its own allegations
8   in the Complaint and the relevant facts and decisional authority which demonstrate that the
9   amount in controversy exceeds $75,000.
10   DTOU's request for an award of attorney's fees should also be denied. Twitter's basis for
11   removing this case was objectively reasonable, and no unusual circumstances exist under which
12   fees should be awarded.

13   **I.   DTOU'S MOTION TO REMAND SHOULD BE DENIED.**

14   **A.   When Determining Whether Removal Is Warranted, The Court May
         Evaluate the Parties' Allegations, the Relevant Facts and Corresponding
15       Reasonable Deductions, Inferences and Other Extrapolations, And Use Its
         Judicial Experience and Common Sense.**
16

17   A defendant's notice of removal may assert the amount in controversy if the complaint
18   seeks (a) nonmonetary relief or (b) a money judgment and the state practice permits recovery in
19   excess of the amount demanded. 28 U.S.C. § 1446(c)(2)(A)(ii). As the Supreme Court has held,
20   the notice "need include only a plausible allegation that the amount in controversy exceeds the
21   jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554
22   (2014); *Flier v. FCA US LLC*, No. 21-cv-02553-CRB, 2021 WL 10894075, at *2 (N.D. Cal. Oct.
23   4, 2021) (denying motion to remand while emphasizing the *Dart Cherokee* for plausibility
24   standard.) When determining whether the amount in controversy requirement is met, courts
25   should begin by determining whether it is "facially apparent" from the complaint that the
26   jurisdictional minimum is in controversy. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373,
27   377 (9th Cir. 1997). "Where it is unclear or ambiguous from the face of a state-court complaint
28   whether the requisite amount in controversy is pled," the defendant must show by a

preponderance of the evidence that the amount in controversy exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).

Ninth Circuit precedent permits district courts to make "'reasonable deductions, reasonable inferences, or other reasonable extrapolations'" from the pleadings to determine whether it is facially apparent that case is removable. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Pretka v. Kolter City Plaza Two, Inc.*, 608 F.3d 744, 754, 771-72 (11th Cir. 2010)). "'[W]hen a removing defendant makes specific factual allegations establishing jurisdiction and can support them . . . with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations[,] [t]hat kind of reasoning is not akin to conjecture, speculation, or star gazing." *Ibarra*, 775 F.3d at 1197 (quoting *Pretka*, 608 F.3d at 771-72). "The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.* at 754.

"Courts may use 'judicial experience and common sense' in determining whether it is 'facially apparent' that the amount in controversy is satisfied." *Dourian v. Stryker Corp.*, No. CV 12-1790 DSF (CWx), 2012 WL 12893752, at *1 (C.D. Cal. Apr. 25, 2012) (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010)). "Put simply, a district court need not 'suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount.'" *Id.* (quoting *Pretka*, 608 F.3d at 770); *see also Jellinek v. Advance Prods. & Sys., Inc.*, No. 10cv1226 JW(WMC), 2010 WL 3385998, at *2 (S.D. Cal. Aug. 24, 2010) (holding that "in light of litigation realities" it was facially apparent from the Complaint that the amount in controversy would likely exceed the $75,000 amount in controversy requirement).

**B.     The Amount in Controversy Exceeds $75,000.**

A common-sense evaluation of DTOU's allegations of significant harm, as well as the corresponding facts and case law addressing the potential monetary value of Twitter accounts with followers, demonstrates that the amount in controversy in this action exceeds $75,000. Further, as explained in greater detail below, that conclusion is corroborated by DTOU's

selection of "over $100,000.00" on its civil cover sheet. The Court thus should reject DTOU's invitation to shelve common sense in support of DTOU's forum shopping.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). Here, DTOU's "object of the litigation" is to reinstate the Becks' Twitter accounts and get damages and other forms of relief allegedly caused by the Becks' account suspensions. The combined "value" of that relief exceeds $75,000.

DTOU alleges that "Beck & Lee's use of social media was especially vital to the advocacy of their clients' cause" and that the Twitter accounts associated with Mr. and Mrs. Beck, "which had over 30,000 followers combined," were "a vital component of Beck & Lee's social media advocacy on behalf of its clients." Dkt. No. 1-1 at *11-12, ¶¶ 10-11. Additionally, DTOU alleges that Mr. and Mrs. Beck "continue to be excluded from the digital town square, subjected to unwarranted attacks on their reputation and character with no ability to respond, and have been significantly damaged in the ability to advocate for their clients in their chosen profession." *Id.* at *13, ¶ 15. As a result of Twitter's alleged refusal to reinstate the Twitter accounts associated with Mr. and Mrs. Beck, DTOU seeks "damages, injunctive relief, prejudgment and post-judgment interest, court costs, and all other relief as may be necessary and proper." *Id.* at *15. DTOU does not specify the amount of damages it seeks, nor the forms of injunctive relief it requests. It appears, however, that at a minimum DTOU seeks an injunction requiring Twitter to reinstate the Twitter accounts associated with Mr. and Mrs. Beck—accounts which DTOU alleges are of significant value to the Becks both personally and professionally. *Id.* at *11-13, ¶¶ 10-11.[1]

The Becks' alleged loss of over 30,000 combined followers, which allegedly

---

[1] On their law firm website, Mr. and Mrs. Beck tout their success of recovering millions of dollars on behalf of their clients and offering contingency fee arrangements— http://www.beckandlee.com/—which potentially further underscores DTOU's allegation of "significant[] damage[]" in the Complaint as supporting the requisite amount in controversy in this action. Dkt. No. 1-1 at *13, ¶ 15.

"significantly damaged" both their ability to advocate for their clients and their reputation and character, alone demonstrates that the value of the object of the litigation (*i.e.*, the Twitter accounts) exceeds the jurisdictional threshold. *See PhoneDog v. Kravitz*, No. C 11-03747 MEJ, 2011 WL 5415612, at *3 (N.D. Cal. Nov. 8, 2011) (amount-in-controversy requirement met where Plaintiff alleged damages associated with approximately 17,000 followers).

This Court's decision in *PhoneDog* is instructive. There, this Court found that the amount-in-controversy requirement was satisfied when a Twitter account had 17,000 followers. *Id.* at *3. Here, DTOU alleges that the subject Twitter accounts had over 30,000 followers, clearly more than the 17,000 this Court in *Phonedog* found was sufficient to satisfy the amount-in-controversy requirement. Dkt. No. 1-1 at *12, ¶ 11.[2] *Phonedog* is also relevant here because this Court used the appropriate common-sense approach and considered the number of followers for a Twitter account and "industry standard" monetary figures to determine whether the amount-in-controversy requirement was met. 2011 WL 5415612, at *3-5. The assertion here that the requisite amount in controversy exists in this case based on DTOU's own allegations and related facts is plausible and supported by particularly relevant authority.[3]

Against the entirety of that backdrop, it is particularly notable that the Civil Cover Sheet filed by DTOU lists the "Amount of Claim" as "over $100,000.00." Dkt. No. 1-1 at *3. California district courts routinely assess this type of information in California when considering the amount in controversy. *See Mendenhal v. Christensen*, No. 16-cv-04232-JSC, 2016 WL

---

[2] This relevant comparison with *Phonedog*, underscores the difference in assessing the alleged injuries here, as opposed to those in *Chase v. Holiday CVS, LLC*, No. 22-cv-20752, 2022 WL 2135446, at *3 (S.D. Fla. May 13, 2022), where "Defendant [was] unable to assign dollar figures to Plaintiff's claimed injuries to meaningfully argue that the amount in controversy exceeds $75,000.00."

[3] DTOU tries to distinguish *Phonedog* by arguing that "there is no damages model alleged in Plaintiff's complaint nor is there any type of methodology before the Court that could be used to value Plaintiff's claim for purposes of determining subject-matter jurisdiction." (Motion to Remand at 9 n.2.) *Phonedog* does not hold that a damages model is required for establishing the amount-in-controversy requirement. Further, that there is no damage model before the Court at this stage of the proceeding does not preclude Twitter from removing DTOU's lawsuit to federal court.

1  5339710, at *2 (N.D. Cal. Sept. 1, 2016) (finding that a civil cover sheet indicating the plaintiff
2  sought $222,684 in damages satisfied the amount-in-controversy requirement and dismissing on
3  other grounds); *Deutsche Bank Nat. Trust Co. v. Cambron*, No. 12-1901-EDL, 2012 WL
4  1712035, at *3 (N.D. Cal. May 12, 2012) (recommending remand where the complaint stated the
5  demand did not exceed $10,000 and the civil cover sheet indicated demand was $25,000 or less).
6  Although DTOU alleges in the Complaint that the value of the relief it is seeking exceeds only
7  $50,000, *id.* at *13, ¶ 16, DTOU went much further with its selection in the Civil Cover Sheet,
8  skipping over five other options of lower ranges of monetary value, four of which would have
9  squarely indicated an amount in controversy of less than $75,000. *Id.* DTOU's designation of
10 "over $100,000.00" in the Civil Cover Sheet thus confirms that the amount in controversy here
11 exceeds $75,000.

12      DTOU's argument that the amount-in-controversy requirement has not been met is an
13 attempt to evade the impact of its own allegations about the 30,000 Twitter accounts at issue in
14 this action, as well as its own statements in the Civil Cover Sheet. Furthermore, DTOU's refusal
15 to provide any calculation or estimate of its own damages demonstrates its forum shopping
16 tactics. Not only did DTOU file a lawsuit in Florida in violation of the mandatory forum
17 selection clause, it now seeks to avoid federal jurisdiction through intentionally opaque damage
18 allegations.

19      Although ultimately DTOU is not entitled to any relief from this action, *see generally*
20 Twitter's Motion to Dismiss (Dkt. No. 30), DTOU's allegations in the Complaint, as well as
21 surrounding facts, relevant authority addressing the very same question, and DTOU's own
22 selection of a monetary value for its claim on the Civil Cover Sheet it filed, confirm that the
23 amount in controversy exceeds $75,000, and remand is not warranted.

24      **C.  The Court Should Reject DTOU's Argument that the Court, In Determining
25          the Amount in Controversy, Should Disregard DTOU's Civil Cover Sheet.**

26      DTOU's principal argument in support of remand—that removal cannot rest on
27 information provided in the Civil Cover Sheet DTOU filed with its complaint—is an effort to
28 distance itself from its own allegations and information it provided in starting this action.

Additionally, this argument wrongly seeks to have the Court ignore its own experience and common sense in evaluating the amount in controversy in the context of DTOU's claim.

While decisions from courts *in Florida* hold that civil cover sheets alone are traditionally not sufficient to justify removal of a state court action, *California* courts have relied on that information in determining the amount-in-controversy requirement. *See Mendenhal*, at *2 (finding that civil cover sheet indicating plaintiff sought $222,684 in damages satisfied amount in controversy requirement and dismissing on other grounds); *Deutsche Bank Nat. Trust Co.*, 2012 WL 1712035, at *3 (recommending remand where the complaint stated the demand did not exceed $10,000 and the civil cover sheet indicated demand was $25,000 or less). This Court may thus rely on the information in DTOU's civil cover sheet in determining the amount in controversy.

Further, DTOU's civil cover sheet is only one piece of information supporting removal. When considering the civil cover sheet along with the additional information noted above, Twitter has established that the value of DTOU's relief exceeds the $75,000 threshold. DTOU's suggestion, *relying entirely on decisions from courts in Florida,* that the Court should ignore DTOU's own Civil Cover Sheet altogether misses the mark and ignores the bigger picture—that it is apparent from DTOU's own allegations in the Complaint that the amount in controversy exceeds $75,000. As noted in Twitter's reply to support transfer (Dkt. No. 14), Twitter does not contend that removal is appropriate based on the simple fact that DTOU selected "over $100,000.00" on the civil cover sheet, as DTOU argues. *See* Motion to Remand, at 5. Instead, Twitter directs attention to DTOU's Civil Cover Sheet because, **taken together with the allegations in the Complaint**, it readily corroborates that the amount in controversy exceeds $75,000.

The cases relied on by DTOU involved situations in which the removing defendant relied on the monetary amount stated in the Florida civil cover sheet, without providing any meaningful evidence establishing the amount in controversy for the court to consider in tandem with the civil cover sheet. The *Chase* case on which DTOU principally relies provides a concise summary:

> while courts have allowed defendants [seeking removal] to rely on civil cover sheets, courts have uniformly required **additional evidence in conjunction with civil cover sheets.** *See, e.g., Bell v. Ace Ins. Co. of the Midwest*, No. 2:20-CV-309-JLB-NPM, 2020 WL 7396934, at *3 n.6 (M.D. Fla. Dec. 17, 2020)] (noting that "courts rejected the defendant's reliance on the state civil cover sheet on the ground that it was not **sufficient by itself** to satisfy the defendant's burden of establishing the amount in controversy exceeded the jurisdictional threshold"); *Durshimer v. LM Gen. Ins. Co.*, No. 8:20-CV-2014-T-33AEP, 2020 WL 5366721, at *2 (M.D. Fla. Sept. 8, 2020) (holding that the amount of damages stated in the cover sheet was not "compelling, considering the policy limit of $100,000, and **absent any additional factual support**"); *Physicians Imaging-Lake City, LLC v. Nationwide Gen. Ins. Co.*, No. 3:20-CV-1197-J-34JRK, 2020 WL 6273743, at *3 n.3 (M.D. Fla. Oct. 26, 2020) (holding that the estimate of damages contained in the state civil cover sheet, "**unaccompanied by any supporting information**," is "analogous to a barebones pre-suit demand letter and thus, insufficient to demonstrate that the amount in controversy plausibly exceeds $75,000").

*Chase*, 2022 WL 2135446 at *3 (emphasis added).

As acknowledged in Section I(B) *supra*, the monetary amount DTOU selected in the civil cover sheet does not, by itself, establish the amount on controversy. Rather, it corroborates the allegations and damages described in the Complaint. As such, DTOU's suggestion that "[t]he civil cover sheet cannot be considered evidence of the amount in controversy," (Motion to Remand at 5), misstates the law. In situations such as the case at bar, where the civil cover sheet is accompanied by other allegations establishing that the amount in controversy exceeds $75,000, the civil cover sheet can be considered by the Court as additional evidence demonstrating the amount in controversy.

Further, it is important to note that while DTOU attacks the relevance of its own Civil Cover Sheet for purposes of ruling on the Motion to Remand, it has not put forth any evidence that the amount in controversy does not exceed $75,000. The court's opinion in *Digital Age Marketing Group, Inc. v. Sentinel Insurance Company Limited*, 504 F. Supp. 3d 1345 (S.D. Fla. 2020) is instructive on this point. There, the court denied the plaintiff's motion to remand, noting that, "[w]hile Plaintiff repeatedly questions the admissibility of Defendant's evidence it does not put forth any evidence that would demonstrate that the amount in controversy is less than $75,000 or remains completely indeterminate." *Id.* at 1348. The court emphasized that not relying on judicial experience and common sense "would permit a plaintiff to 'defeat federal

jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no details on the value of the claim.'" *Id.* at 1347 (quoting *Roe*, 613 F.3d at 1064).

DTOU is attempting to avoid jurisdiction in precisely that manner. DTOU alleges injuries that, by its own more recent description in its Motion to Remand, are "unquantified by any dollar figure." Motion to Remand at 8. DTOU seeks remand by repeatedly questioning the information **it** provided, which establishes the amount in controversy exceeds $75,000, without putting forth any evidence of its own that would establish that the amount in controversy is less than $75,000. DTOU's effort to evade the impact of its own allegations should be disregarded, and remand should be denied.

## II. DTOU SHOULD NOT BE AWARDED ATTORNEY'S FEES.

"An order remanding the case ***may*** require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (emphasis added). However, "'courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Dall v. Albertson's, Inc.*, 349 F. App'x 158, 160 (9th Cir. 2009) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)).

As the Supreme Court explained in *Martin*:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied. In light of these "'large objectives,' " the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, ***when an objectively reasonable basis exists, fees should be denied***. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

546 U.S. at 140-41 (internal citations omitted) (emphasis added).

Even if this Court agrees that the instant action should be remanded (as explained above, it should not), Twitter's basis for removal was objectively reasonable, especially given the

authority on which it relied providing that the Court can consider civil cover sheets in determining the amount in controversy. *See, e.g.*, *Jian-MingZhao v. RelayRides, Inc.*, No. 17cv-04099-JCS, 2017 WL 6336082, at *16-17 (N.D. Cal. Dec. 12, 2017) (denying fees under § 1447(c) where the removing party relied on one side of a "split of authority in [the] district" as to how to estimate attorneys' fees for purposes of determining the amount in controversy); *Walcott v. Ferrelgas, Inc.*, No. 6:21-cv-154-GAP-DCI, 2021 WL 3518204, at *3, n.4 (M.D. Fla. Mar. 8, 2021) (denying fees under § 1447(c) where removing party "relied on one side of an intracircuit split of authority" and noting that such "reliance constitutes an objectively reasonable basis to seek removal"). Given the information available to Twitter,[4] and the mandatory forum in the Northern District of California, the timing of removal here was also objectively reasonable. *See, e.g.*, *Cuevas v. Ford Motor Co.*, No. 22-1520-DMG, 2022 WL 1487178, at * 3 (C.D. Cal. May 11, 2022) (examining contents of civil cover sheet to determine whether removal was necessary and timely); *VNA of the Treasure Coast, Inc. v. Am. Alternative Ins. Corp.*, No. 10-14283-CIV, 2011 WL 13224907, at *3 (S.D. Fla. Feb. 8, 2011) (awarding fees under 28 U.S.C. § 1447(c) as result of late removal).

Moreover, DTOU is represented by Mr. and Mrs. Beck, who purport to have assigned their rights to DTOU under their "contractual relationships with Twitter." Dkt. No. 1-1 at *12, 14, ¶¶ 11, 18. DTOU appears to be an entity formed for the sole purpose of pursuing this action (Dkt. No. 1 at *2, ¶ 4), and is effectively a *pro se* litigant that is not incurring attorney's fees as an expense in the prosecution of this motion. Attorneys' fees therefore should be denied. *See Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986) (affirming district court's denial of attorney's fees under Freedom of Information Act because plaintiff, appearing *pro se*, "has incurred neither fees nor costs and thus has no such expenses to recover"); *see also Mayock v.*

---

[4] In an effort to determine the amount in controversy, Twitter sought to obtain the presuit demands and "requests for reinstatement" of accounts alleged by DTOU in the Complaint (Dkt. No. 1-1 at *13, ¶ 15). DTOU's counsel responded that Twitter and its counsel should "Get them from John Quinn. I don't get paid to work for you," among other dismissive statements. While DTOU ultimately provided the materials nearly a week later, the responses from its counsel made it evident that further efforts to confer would be fruitless.

1  *I.N.S.*, 736 F. Supp. 1561, 1563 (N.D. Cal. 1990) (denying request for attorneys' fees for time
2  spent by *pro se* attorney, reasoning that "[t]he Ninth Circuit has held that a *pro se* litigant, who is
3  not an attorney, is not entitled to receive attorneys' fees under FOIA . . . . [P]*ro se* plaintiffs who
4  happen to be attorneys should not be treated differently from *pro se* litigants who are not
5  attorneys"); *see also U.S. S.E.C. v. Chapman*, 602 F. App'x 407, 407 (9th Cir. 2015) (denying
6  request for attorneys' fees made by attorney appearing *pro se*).

   The removal of this action from state court was objectively reasonable, and no unusual circumstances exist under which fees should be awarded. As such, DTOU's request for attorney's fees should be denied.

## III. CONCLUSION

Twitter made specific factual allegations, supported by evidence and information that, combined with relevant decisional authority and reasonable extrapolations, demonstrate by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. The Court has jurisdiction over this case under 28 U.S.C. § 1332(a)(1), and DTOU's motion to remand should be denied.

Respectfully submitted,

Dated: June 30, 2023                HILL, WARD & HENDERSON, P.A.


By:  /s/ *Joshua C. Webb*
     Joshua C. Webb


WILLENKEN LLP
Kenneth M. Trujillo-Jamison
ktrujillo-jamison@willenken.com

*Attorneys for Defendant*
*Twitter, Inc.*

**ECF ATTESTATION**

Under Local Rule 5-1(h)(3), I, Kenneth M. Trujillo-Jamison, hereby attest that Joshua C. Webb, the signatory to Defendant's Opposition to Plaintiff's Motion to Remand Based on Lack of Subject-Matter Jurisdiction and Request for Attorneys' Fees and Costs Caused By Improvident Removal (Dkt. 35), has concurred in its filing.

Dated:  June 30, 2023                    By:   */s/ Kenneth M. Trujillo-Jamison*
                                                            Kenneth M. Trujillo-Jamison