**BECK & LEE TRIAL LAWYERS**
ELIZABETH LEE BECK (CA Bar No. 233742)
elizabeth@beckandlee.com
8306 Mills Drive, #248
Miami, Florida 33183
Tel:   305-234-2060
Fax:   786-664-3334

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DON'T TREAD ON US, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TWITTER, INC., <br><br> Defendant. | Case No: 4:23-cv-02461-JD <br><br> Hon. James Donato <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND BASED ON LACK OF SUBJECT-MATTER JURISDICTION AND REQUEST FOR ATTORNEYS' FEES AND COSTS CAUSED BY IMPROVIDENT REMOVAL** <br><br> Date:      July 27, 2023 <br> Time:      10:00 a.m. <br> Ctrm:      11 <br><br> Complaint filed May 19, 2023 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

As the removing party, the burden is on Twitter to prove, by a preponderance of evidence, that federal jurisdiction exists.  Because the complaint raises no federal claims or issues, this means that Twitter must demonstrate, by evidence, that the amount in controversy exceeds the $75,000 threshold for diversity jurisdiction.

Despite acknowledging the evidentiary burden, Twitter has wholly failed to meet it.  The Florida state civil cover sheet, which spearheaded Twitter's endeavor to establish diversity jurisdiction in its removal notice, is simply not available as a source for the claim amount.  This is because the civil cover sheet and the instructions for completing it state that "the estimated amount of the claim [in the civil cover sheet] is requested for data collection and clerical processing purposes only" and "shall not be used for any other purpose."  This language was adopted, as held by the Florida Supreme Court, exactly in order to prevent the opposing party from deploying the information for "tactical reasons."  And those courts to have considered the issue unanimously reject removal attempts based on the estimated claim amount checked off on a Florida civil cover sheet.  Twitter provides no countervailing authority on this issue, and its citation of cases involving California or federal civil cover sheets are inapposite because neither of those cover sheets has the critical restrictive language that the Florida sheet does.

Aside from the cover sheet, Twitter simply proffers the generalized allegations (not evidence) of injury in the complaint and asks the Court to conclude, based on "common sense" and *PhoneDog v. Kravitz*, No. C 11-03747 MEJ, 2011 WL 5415612 (N.D. Cal. Nov. 8, 2011) that the $75,000 threshold is met.  With all due respect, "common sense" should compel just the opposite conclusion.  *PhoneDog* found the amount-in-controversy threshold met based on a damages model supplied by the party seeking to establish federal jurisdiction; Twitter has supplied no such damages model or comparable data here, despite more than ample opportunity to do so.  And while *PhoneDog* involved a company that was directly marketing its services to consumers through its Twitter account, the accounts in this case belong to two lawyers who

used them primarily in connection with their personal political and social commentary, as well as one unprofitable litigation that concluded years ago.   If these accounts had any commercial value at all before they were suspended, it was *de minimis*.  If these accounts were unsuspended now, in fact, they would have even less value, as the accountholders are in the process of exiting from the full-time practice of law and are currently engaged in numerous other non-legal ventures, none of which have any conceivable economic benefit to be gained from Twitter activity.[1]  To conclude, based on the record evidence, that the amount in controversy exceeds $75,000 would be grossly and impermissibly speculative.

At the end of the day, Twitter has failed to meet its burden to prove this case belongs in federal court.  Because so many suits against Twitter allege First Amendment claims, Twitter undoubtedly has become accustomed to receiving, and perhaps even has come to expect, a federal forum.  But this is not one of those cases.  While it may be true that Twitter has somehow become the custodian of the digital public sphere and thus our digital free speech rights, there is no "federal law of Twitter" or automatic federal forum available whenever the company is sued.  Instead, like any other litigant, Twitter must satisfy the rigorous parameters for lodging a claim in federal court.

Instead of supplying evidence to back up its jurisdictional assertion – which Twitter admits was its burden – Twitter relied exclusively on a Florida civil cover sheet and unspecified allegations (not evidence) of injury in the complaint, which do not even support the $75,000 threshold on their face.  Clear precedent from the Southern District of Florida – the Court to which the case was removed – forewarns against this very approach; nonetheless, Twitter obdurately persisted, convinced of its misconceived entitlement to a federal forum.  Under the circumstances, the Court should remand the case and award Plaintiff its costs and attorneys' fees pursuant to § 1447(c).

---

[1]     Such activities include, but are not limited to, farming, livestock and poultry sales, and various private consultancy and management roles.

## II.      THE CASE SHOULD BE REMANDED

In its response [D.E. 39], Twitter fails to meaningfully contend with the legal framework that most closely bears on its attempt to remove this case: *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316 (11th Cir. 2001) and *Chase v. Holiday CVS, LLC*, Case No. 22-cv-20752-BLOOM/Otazo-Reyes, 2022 WL 2135446 (S.D. Fla. May 13, 2022).  These cases stand for the proposition that "a plaintiff's allegations of extensive injuries in the complaint are insufficient to establish the amount in controversy."  *Id.* at *3.  But the "plaintiff's allegations of extensive injuries in the complaint" is all Twitter has proffered to meet its evidentiary burden, along with the civil cover sheet.  *Chase* rejected this very approach, and so should this Court.  *See id.* ("[T]he Court determines that Defendant has failed to meet its burden by a preponderance of the evidence through the Civil Cover Sheet and Plaintiff's alleged injuries.").

Whereas Twitter relies on *Digital Age Marketing Group, Inc. v. Sentinel Ins. Co. Ltd.*, 504 F. Supp. 3d 1345 (S.D. Fla. 2020), the case actually highlights the deficiency in Twitter's evidentiary presentation.  There, the court denied a motion to remand because the defendant **actually supplied evidence** to support an amount in controversy over $75,000.  *See id.* at 1346 n.1 ("Defendant Sentinel calculated the $82,290 figure by taking Plaintiff's annual sales figure from an Experian report on Plaintiff and multiplied this figure, $633,000, by the percentage of the year Plaintiff's complaint alleged it was closed, 13%.").  No one disputes that a court should use "judicial experience and common sense" in assuring that the jurisdictional threshold is satisfied, but here, Twitter has failed to provide any comparable evidence to assist the Court in its task.

While the law precludes Twitter from relying exclusively on Plaintiff's allegations and the civil cover sheet, Twitter's inferences from the allegations are also devoid of common sense and greatly exaggerated.  As alleged in the state-court Complaint, the two suspended accounts at issue were used in connection with advocacy in a single case, *Wilding v. DNC Services Corp.*, 941 F.3d 1116 (11th Cir. 2019), *cert denied by Wilding v. DNC Servs. Corp.*, 140 S.Ct. 2828 (2020).  *See* Compl. ¶¶ 8-10.  That litigation did not result in a favorable judgment or settlement

for the plaintiffs; Beck & Lee and its co-counsel earned no compensation from the matter and ended up losing their out-of-pocket costs.  *See id.* ¶ 8; Declaration of Elizabeth Lee Beck ("E. Beck Decl.") (**Exhibit 1** hereto) ¶ 3.   Needless to say, Beck & Lee's public advocacy efforts, while harmonious with their clients' interests as understood by the district court, could not have made a difference to the outcome of the case, which was dismissed on standing grounds.  *See Wilding v. DNC Servs. Corp.*, No. 16-61511-CIV, 2017 WL 6345492, *3 (S.D. Fla. Aug. 25, 2017) (Zloch, J.) ("To the extent Plaintiffs wish to air their general grievances with the DNC or its candidate selection process, their redress is through the ballot box, the DNC's internal workings, **or their right of free speech**—not through the judiciary." (emphasis added)). Twitter strains to tie the accounts to Beck & Lee's general legal practice beyond *Wilding*, but this does not comport with the allegations or the facts.

The evidentiary lacuna is not cured by Twitter's vain attempt to bootstrap a damages model into the Court's analysis through citation of an unpublished California district court order.  As explained in Plaintiff's remand motion, *PhoneDog v. Kravitz*, No. C 11-03474 MEJ, 2011 WL 5415612 (N.D. Cal. Nov. 8, 2011), is inapposite because the damages model and its accuracy were pled in the plaintiff's complaint and thus the court had to take the model as true on a facial challenge to subject-matter jurisdiction brought by the defendant.  However, even if this model were properly before the Court and it were accompanied by any indicia of accuracy (which it is not), it would plainly have no bearing on this case.  For one, this is not a lawsuit brought by a company that reviews mobile products and services against a former employee for misappropriating its Twitter account for eight months.  *See id.* at *1.  The Twitter accounts at issue here belong to two private individuals, former full-time lawyers; they were mainly used for social, personal and political commentary as well as public advocacy in connection with one unprofitable litigation, and otherwise did not have a commercial purpose.  Clearly, the "industry standards" governing the *Phonedog* model do not apply here.  Furthermore, for jurisdictional purposes, Plaintiff's damages are confined to a period of less than two months, *i.e.*, the day the amnesty was announced until the date of filing the Complaint.  If there is any value to the

accounts (which presumably could be unsuspended by pushing a button or two at Twitter

headquarters, as has been done for thousands of accounts already pursuant to Twitter's amnesty

policy, but not in this case for some mysterious and undisclosed reason), it is squarely in the

domain of speech, which is notoriously hard to value.  *Cf. Celli v. City of Augustine*, 214 F.

Supp. 2d 1255, 1262 (M.D. Fla. 2000) ("it is difficult indeed to put a monetary value on an

intangible right as significant as free speech"; approving jury award of $23,500).

    In any event, Twitter (which presumably has access to data measuring how accounts are

valued by various concerns, such as users and advertisers) chose to supply **no evidence** to

supplement its reliance on the civil cover sheet and Plaintiff's general allegations of injury.  The

precise approach was rejected in the well-reasoned *Chase* opinion.

    Plaintiff's motion to remand should be granted.

## III.    <u>PLAINTIFF SHOULD RECOVER FEES AND COSTS UNDER § 1447(C)</u>

    While Twitter has repeatedly accused Plaintiff of "forum shopping," ironically, it is

Twitter which lodged this case in a federal forum without evidence of federal jurisdiction.

Despite having the opportunity to submit "affidavits, declarations, or other documentation" to

fulfill its evidentiary burden, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir.

2010), Twitter chose instead to place its exclusive reliance on a Florida state civil cover sheet

and the Complaint's general allegations (not evidence) of injury untethered to a dollar amount.

As discussed, the district to which Twitter removed roundly rejected the same approach to

removal in *Chase v. Holiday CVS, LLC*, which found it to be inconsistent with the framework

articulated in *Williams v. Best Buy Co., Inc.*  Indeed, despite the fact that the evidentiary burden

lies squarely with Twitter as the removing defendant, it was Plaintiff that submitted evidence

regarding the amount-in-controversy, producing correspondence showing it never demanded

even a penny in its pre-suit dealings with Twitter's counsel.[2]

---

[2]    Twitter makes the bizarre claim that Plaintiff's counsel's response to an email from
Twitter's counsel requesting documents without propounding a discovery request somehow
impeded Twitter's ability to confer with Plaintiff regarding the amount in controversy.  *See*

"[T]he intent of § 1447(c) is to reimburse Plaintiffs who have incurred expenses in attacking improper removals," and the statute does not require a showing of bad faith but only that the removal lacked an objectively reasonable basis. *Martyak v. Martyak*, 378 F. Supp. 2d 1365, 1369 (S.D. Fla. 2005) (citations, internal quotation marks, and textual alterations omitted); *Rae v. Perry*, 392 Fed. Appx. 753, 754 (11th Cir. Aug. 16, 2010). Here, an award of fees and costs to Plaintiff is appropriate; Twitter's removal attempt was foreclosed by clear precedent on all fours, and there is no "intracircuit split of authority" as Twitter disingenuously claims. Response at 9; *see also Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993) ("the propriety of the defendant's removal continues to be central in determining whether to impose fees"); *Tran v. Waste Mgmt., Inc.*, 290 F. Supp. 2d 1286, 1296 (M.D. Fla. 2003) (awarding fees and costs where removal attempt contravened Eleventh Circuit precedent); *Rae*, 392 Fed. Appx. at 756 (approving award of fees and costs where the defendant "failed to present evidence that showed by a preponderance of the evidence that the compensatory and unspecified damages in the complaint, including punitive damages and attorneys' fees, alone or combined, met the jurisdictional amount. [The defendant's] calculations were based on his own speculation, and therefore, were not objectively reasonable.").

Finally, Twitter's assertion that Plaintiff is "effectively a *pro se* litigant" and thus barred from recovering under § 1447(c) is simply flat incorrect. If Plaintiff were *pro se*, then it could not be litigating this action because, "It is a longstanding rule that [corporations and other unincorporated associations must appear in court through an attorney." *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004). Here, Plaintiff is a corporation being represented by two attorneys who are also members and managers of the corporation.

---

Response at 7. This makes absolutely no sense and is, in fact, misleading. Not only did Plaintiff's counsel provide the requested documents (which show that Plaintiff never made any payment demand in its pre-suit correspondence with Twitter), but Plaintiff's counsel subsequently conferred by telephone with Twitter's counsel – at the latter's request. Not once did Twitter's counsel raise the issue of the amount in controversy or the quantity of damages sought by Plaintiff. E. Beck Decl. ¶ 4. In fact, Twitter's counsel has **never** sought to confer with Plaintiff regarding the amount in controversy, preferring to litigate the issue purely through court filings.

There is no legal principle which prevents the recovery of attorneys' fees in such circumstances. To the contrary, courts have approved attorneys' fees awards in analogous contexts. *See Treasurer, Trs. of Drury Indus., Inc. Health Care Plan & Tr. v. Goding*, 692 F.3d 888, 898 (8th Cir. 2012) ("We join the Fourth, Fifth, and D.C. Circuits to hold that, where an attorney represents his or her own firm, [*Kay v. Ehrler*, 499 U.S. 432 (1991)] does not forbid the award of attorneys' fees."); *Shelton v. Schar*, No. 5:17-cv-86-Oc-PGBPRL, 2018 WL 6261485, *2 n.5 (M.D. Fla. Oct. 18, 2018) ("While the Eleventh Circuit does not appear to have addressed this issue, at least four other Circuit Courts of Appeal have determined that law firms represented by their own attorney members are eligible for an award of fees because the law firm is a separate entity from its attorneys, analogous to a corporate party represented by in-house counsel."); *Nwaneri v. Quinn Emanuel Urquhart Oliver & Sullivan, LLP*, 250 A. 3d 1070 (D.C. Ct. App. 2021) (awarding fees, including under § 1444(c), to law firm which represented itself); *Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398, 400 (5th Cir. 1989) ("Just as the corporation should be entitled to compensation for the time which in-house counsel could have spent on other corporate matters, so is a law firm entitled to compensation for the time which the representing attorney could have spent on other client matters.").

DATED: July 7, 2023

Respectfully submitted,


/s Elizabeth Lee Beck

Counsel for Plaintiff Don't Tread on Us, LLC